MANUFACTURERS AND TRADERS TRUST COMPANY, Appellant, v SERVOTRONICS, INC., Respondent.

Fourth Department, December 18, 1987

**APPEARANCES OF COUNSEL**

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor T. Fuzak* and *William H. Gardner* of counsel), for appellant.

*Jaeckle, Fleischmann & Mugel (Linda H. Joseph* of counsel), for respondent.

**OPINION OF THE COURT**

GREEN, J.

In this appeal we must decide whether the inadvertent disclosure of documents containing legal advice waives the attorney-client privilege. We hold that the plaintiff has not waived the privilege because there is no evidence of its intention to do so. Further, defendant has not shown that it will suffer prejudice if a protective order is granted. Therefore,

plaintiff is entitled to a protective order directing the return of the disclosed documents and enjoining use of the disclosed material in further proceedings in this matter.

In 1977, plaintiff Manufacturers and Traders Trust Company (bank) and defendant Servotronics, Inc. (Servotronics) executed a "debt modification agreement" in which Servotronics agreed to issue the bank 20,000 shares of its preferred stock in payment of $4,000,000 of its indebtedness to the bank. The parties also executed a "sinking fund agreement" in which Servotronics agreed to make annual payments into a sinking fund for nine years commencing April 1978 in order to redeem its stock at a price of $200 per share. The debt modification agreement also provided that any contingent interest due Citibank and The Bank of New York would be credited in a formula to determine if and when payment should be made to the sinking fund.

In 1987, the bank sued Servotronics to recover $449,000 which the bank claimed Servotronics owed in delinquent sinking fund payments. It is Servotronics' position that no sinking fund payments are required because the bank's interpretation of the debt modification agreement and the sinking fund agreement is incorrect. Servotronics also claims that it is entitled to a deduction of approximately $1,500,000 as the amount due and payable to Citibank and The Bank of New York, or at least $450,000 as the amount actually paid these banks in satisfaction of the $1,500,000 before any sinking fund payment was to be made to the plaintiff bank. Servotronics also asserts in a counterclaim that the plaintiff bank breached its agreement to sell its entire preferred stock position no later than December 31, 1981, thus rendering the debt modification agreement and the sinking fund agreement void and unenforceable. This alleged agreement by the bank was purportedly occasioned by the bank's uncertainty whether it could legally continue to hold the preferred stock issue for more than five years.

Servotronics served a notice for the deposition of bank witnesses and demanded production of a large quantity of bank records and documents including all correspondence, memoranda and notes pertaining to the debt modification agreement, the sinking fund agreement and the agreement between Servotronics, and Citibank and The Bank of New York. Pursuant to the notice, the bank's attorney procured from the bank several storage boxes of documents. Counsel then reviewed the large quantity of files to identify and

remove those documents that contained attorney-client privileged materials. Once the bank's counsel completed that process, he made the remaining documents available to Servotronics' counsel for examination. When Servotronics' attorney requested that certain documents be copied, the bank's counsel arranged for a paralegal in his office to identify in which box each document was found, to copy the documents and to deliver them to Servotronics' counsel, which he did on May 8, 1987. The bank's counsel did not examine any of the requested documents after they had been designated for copying by representatives of the defendant.

On June 19, 1987 in preparation for depositions scheduled shortly thereafter, the bank's counsel discovered that six documents containing attorney-client privileged matter were inadvertently included in the files disclosed. Each of the documents was an interoffice memorandum from one bank officer or attorney to another containing legal advice regarding the application of securities laws to the preferred stock of Servotronics and the bank's position in the stock.

On June 23, 1987, the bank moved for a protective order seeking return of the six documents and an injunction preventing Servotronics from divulging the information or using it in further proceedings in this action. Servotronics opposed the motion and cross-moved for an order declaring that the bank waived the attorney-client privilege because it voluntarily disclosed the documents and because New York law does not recognize an exception to waiver on the ground of inadvertence.

Special Term, after reviewing the six documents, in camera, denied the bank's motion reasoning that the matter contained therein did not constitute protectable attorney work product and that, in any event, the bank waived the attorney-client privilege by failing to preserve it through due diligence. We disagree.

■ Our independent review of the six documents in issue reveals that they contain material protected by the attorney-client privilege. The attorney-client privilege finds expression in statute (CPLR 4503) and ethical code (Code of Professional Responsibility EC 4-1) and is strongly rooted in the constitutional right to counsel (US Const 6th Amend; NY Const, art I, § 6). It exists to insure that all who seek legal advice will confide in counsel, secure in the knowledge that confidential communications will not be exposed *(Matter of Priest v Hen-*

*nessy,* 51 NY2d 62, 67-68). In order to invoke the privilege there must be an attorney-client relationship and the communications must be made in confidence for the purpose of obtaining legal advice *(Matter of Jacqueline F.,* 47 NY2d 215, 219; *People v Belge,* 59 AD2d 307, 309). That is the case here because each of the documents in issue contains legal advice based upon information provided by the bank *(cf., Matter of Grand Jury Subpoena [Bekins Record Stor. Co.],* 62 NY2d 324, 329-330; *Kenford Co. v County of Erie,* 55 AD2d 466, 469).

Although not essential to our determination of the case, we reject Special Term's rationale that the material contained in the documents does not constitute protectable attorney work product because it "is relevant to the underlying issues of the lawsuit and involves legal opinions received by the plaintiff relating to SEC regulations." An attorney's work product includes memoranda, correspondence, mental impressions and personal beliefs conducted, prepared or held by the attorney *(Hickman v Taylor,* 329 US 495, 511; *Warren v New York City Tr. Auth.,* 34 AD2d 749). Each of the six documents in issue here is a memorandum containing legal advice from plaintiff's counsel to bank employees and officers and constitutes attorney work product immune from disclosure *(Geffers v Canisteo Cent. School Dist.,* 105 AD2d 1062; *Lehman v Piontkowski,* 84 AD2d 759, 760; *Jarai-Scheer Corp. v St. Paul Fire & Mar. Ins. Co.,* 52 AD2d 555, 556). In this case the documents which we hold privileged also happen to be attorney work product.

■ We also reject Servotronics' contention that the bank is precluded from asserting the attorney-client privilege because it placed the legal opinions of its counsel in issue by commencing this lawsuit. Waiver of the privilege by issue injection occurs only if the privileged material is placed in issue by the party who enjoys the protection of the privilege *(Garfinkle v Arcata Natl. Corp.,* 64 FRD 688, 689 [SD NY 1974]). That is not the situation here because the bank's claim is not grounded upon the legal opinions and advice contained in the six documents in issue. Rather, the bank's claims, as stated in its supplemental complaint, are based upon the enforcement of written agreements which are to be interpreted objectively in accordance with their apparent terms. The bank simply seeks recovery of stated funds claimed to be due pursuant to the sinking fund agreement and makes no reference in its complaint to information contained in the privileged documents.

The bank's only reference to the documents has been in

papers on the motion to enforce the privilege and in response to Servotronics' refusal to honor the privilege. The bank is not attempting to enforce any obligations relating to the preferred stock other than to recover what it claims are delinquent payments Servotronics failed to make in the sinking fund. Since the written agreements upon which the bank's claims are based contain no condition precedent requiring advice of counsel, the bank has no need to present evidence contained in the privileged documents relating to any obligation it may have to sell the stock under government regulations. Indeed, the subject documents are far more important to Servotronics than to the bank since, as Servotronics' counsel has acknowledged in its opposition to the bank's motion for a protective order, the failure to find a waiver would "significantly impair the discovery rights of Servotronics with respect to key evidence concerning its counterclaim" relating to an alleged oral agreement to sell out the stock position no later than December 31, 1981. Thus, the bank has not waived the attorney-client privilege by injecting privileged material into the lawsuit because the bank does not need the privileged documents to sustain its cause of action (see, Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835).

■ Although Special Term did not address the issue, we further reject Servotronics' claim that the bank impliedly waived the attorney-client privilege by making certain communications in 1977 and 1984 concerning the subject matter of the disclosed documents. The 1977 communication was a letter from the bank to Servotronics that merely confirmed the negotiation and execution of the debt modification agreement. The letter simply recites and summarizes several significant provisions of the agreement, including the one requiring the bank to provide Servotronics with a legal opinion letter prior to the bank's disposition of the transferred stock. The expression that legal advice may be sought does not waive the privilege which may attach to such advice. The 1984 communication was a letter from the bank to Servotronics informing Servotronics that the bank's counsel believed the sale of the stock would be required within a short time and would be governed by rule 144 (k) of the Securities and Exchange Commission. Since such notice was required under the debt modification agreement, such a general communication cannot logically be said to have waived the bank's privilege with respect to all material pertaining to the bank's decision to dispose of the stock.

We turn then to the question whether the inadvertent and unauthorized disclosure of the documents constituted a waiver of the attorney-client privilege. Considering the prevalence of corporate litigation involving voluminous discovery material and the inevitability that some privileged documents will be released, it is surprising that no New York State court has addressed the specific issue which confronts us on this appeal. The problem of inadvertent disclosure in large document productions challenges traditional assumptions about the waiver of the attorney-client privilege. Traditionally, courts have held that inadvertent disclosure waives the privilege because the client and attorney possess sufficient means to preserve the secrecy of a communication and because disclosure makes achievement of the benefits of the privilege impossible (see, e.g., Grace & Co. v Pullman, Inc., 446 F Supp 771 [WD Okla 1976]; Underwater Stor. v United States Rubber Co., 314 F Supp 546 [D DC 1970]; 8 Wigmore, Evidence §§ 2325, 2326, at 633 [McNaughton rev]).

■ We reject the traditional approach, however, because it rests on the faulty and unrealistic premise that the only interest protected by the attorney-client privilege is secrecy and that an attorney and client can always keep their communications secret if they make sufficient effort. The fact that information is publicly available does not necessarily make it admissible in evidence. Moreover, although confidentiality can never be restored to a document already disclosed, a court can repair much of the damage done by disclosure by preventing or restricting use of the document at trial. While reasonable precautions might be required to promote appropriate standards of care in document production, there is no reason to apply the harsh traditional approach to a litigant who inadvertently discloses a document, at least prior to the time that remedying an accidental production would cause the adversary any prejudice (see, Davidson and Voth, Waiver of Attorney-Client Privilege, 64 Ore L Rev 637 [1986]; Note, Inadvertent Disclosure of Documents Subject to Attorney-Client Privilege, 82 Mich L Rev 598 [1983]; McCormick, Evidence § 77, at 157 [2d ed]). Thus, we find persuasive the rationale of those cases which have rejected the traditional view and have taken a more commonsense approach (see, Mendenhall v Barber-Greene Co., 531 F Supp 951, 954-955 [ND Ill 1982]; SCM Corp. v Xerox Corp., 70 FRD 508 [D Conn], appeal dismissed 534 F2d 1031 [2d Cir 1976]; Dunn Chem. Co. v Sybron Corp., 1975-2 Trade Cas [CCH] ¶ 60,561 [SD NY 1975]; Connecticut Mut.

*Life Ins. Co. v Shields,* 18 FRD 448, 451 [SD NY 1955]; *Sterling v Keidan,* 162 Mich App 88, 412 NW2d 255; *Kelly v Allegan Circuit County Judge,* 382 Mich 425, 169 NW2d 916).

Intent must be the primary component of any waiver test. The Supreme Court has defined waiver as an "intentional relinquishment * * * of a known right" *(Johnson v Zerbst,* 304 US 458, 464). Rather than requiring a court to evaluate a client's bald claim of intent, however, the client should be required to demonstrate his intent by objective evidence. "As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it" *(Weil v Investment/Indicators, Research & Mgt.,* 647 F2d 18, 25 [9th Cir 1981]). The fundamental questions in assessing whether waiver of the privilege occurred are, whether the client intended to retain the confidentiality of the privileged materials and whether he took reasonable precautions to prevent disclosure *(see, National Helium Corp. v United States,* 219 Ct Cl 612, 616).

Here, the bank satisfactorily addressed these concerns. There is no evidence that the bank intended to disclose the documents; on the contrary, the record clearly establishes that the bank intended to keep the disclosed documents confidential. The bank's assistant vice-president who delivered the entire file to counsel stated that he did not intend to disclose privileged material and the bank's counsel alleged that during a search of the file he discovered and removed those documents he deemed confidential and privileged. The error counsel made was in inadequately screening the material before it was delivered to defense counsel. Notwithstanding that error, however, the fact that counsel undertook a screening procedure indicates that he took some precaution to avoid disclosure of privileged material. Disclosure caused by an error of a competent screener, as counsel was in this case, does not evidence a lack of precautions. Of course, if a screener could not reasonably be expected to differentiate between privileged and nonprivileged documents, the reasonable precaution test would not be met. This could occur if counsel delegated the screening function to a paralegal or to someone with no legal training. That is not the case here, however, because the paralegal's task was not to screen the files for privileged material, but only to collect the documents previously screened by counsel (albeit erroneously) and set them aside for

copying so that each document could be returned to the appropriate file box from which it had come.

Another factor in assessing whether an inadvertent disclosure waives the attorney-client privilege is whether the client promptly objects to the disclosure after discovering it. An objection entered promptly upon learning of a disclosure suggests that a genuine intent to preserve confidentiality existed before disclosure. Here, the privileged documents were disclosed on May 7 and 8, 1987, and counsel discovered the error on Friday, June 19, 1987 and moved for a protective order on Tuesday, June 23, 1987, seeking a stay for appropriate protection. Although depositions commenced on Monday, June 22nd, no questions were asked that called for testimony regarding the subject documents or their contents. Thus, the fact that the bank initiated proceedings to correct the error within two business days after discovering it, and did not allow any testimony or other production to occur that would further compound the error, further supports our conclusion that the bank did not intend to disclose the privileged matter contained in the documents *(cf., Permian Corp. v United States,* 665 F2d 1214, 1220 [DC Cir 1981]; *In re Grand Jury Investigation of Ocean Transp.,* 604 F2d 672, 674 [DC Cir 1979], *cert denied sub nom. Sea-Land Serv. v United States,* 444 US 915).

Another consideration is whether the party claiming the waiver will suffer prejudice if a protective order is granted. For example, in the *Ocean Transp.* case *(supra),* a disclosure of privileged documents was made to the government but the plaintiff did not move for the return of them until 15 months after their production. During the interim, the government had digested and analyzed the documents and used them in questioning witnesses. Thus, the court held that the attorney-client privilege had been waived. In the instant case, however, the bank moved promptly to correct the error and did not compound it by eliciting testimony relative to the documents in question.

We recognize that in cases of inadvertent disclosure, there is a problem in reconciling the principle that the attorney-client privilege belongs to the client and can be waived only by the client, with the doctrine that an attorney may waive the rights of his client when given general power to do so. We reject the absolute view that an attorney may never waive the privilege *(Republic Gear Co. v Borg-Warner Corp.,* 381 F2d 551, 556 [2d Cir 1967]; *Schnell v Schnall,* 550 F Supp 650, 653 [SD

NY 1982]) because, like any other agent, an attorney may possess authority to bind his client *(see, Himmelfarb v United States,* 175 F2d 924, 939 [9th Cir 1949], *cert denied* 338 US 860; *United States v Aronoff,* 466 F Supp 855, 862, n 7 [SD NY 1979]; 8 Wigmore, Evidence § 2325, at 633 [McNaughton rev]). There is no evidence in this record, however, that the bank delegated such authority to its counsel *(cf., In re Grand Jury Investigation of Ocean Transp., supra).* The bank did not intend to disclose the privileged matter and did not authorize its counsel to do so. Thus, there is no justification to find a waiver of the bank's attorney-client privilege simply because the bank's counsel, despite utilization of a screening procedure, inadvertently produced six documents.

Accordingly, the order denying plaintiff's motion for a protective order should be reversed and the motion should be granted.

DOERR, J. P., DENMAN, BOOMER and BALIO, JJ., concur.

Order unanimously reversed, on the law, without costs, and motion granted.