OPINION OF THE COURT
Thomas A. Stander, J.
The plaintiff, Charter One Bank, F.S.B. (Charter One), seeks an order compelling disclosure of certain documents withheld by defendant, Midtown Rochester, LLC (Midtown). In addition plaintiff seeks leave to amend its complaint to add an additional cause of action for damages.
I. Facts
The plaintiff, as tenant, and the defendant, as landlord, both through predecessors in interest, entered into a lease on August 27, 1971 for premises in the former B. Forman Building in the City of Rochester. The parties also entered into several amendments to the lease, including the Fourth Amendment, Sixth Amendment, and Seventh Amendment. This action is a dispute over the terms of the lease and amendments.
In particular, the Sixth Amendment includes language that if the tenant elects not to extend the term of the lease, then *156 the landlord and tenant “shall agree upon a suitable method of returning the atrium area of the Premises, including the elevator and floors, to their condition prior to the commencement of the term of the Lease.” (Sixth Amend of lease, Dec. 16, 1993.) This provision also sets forth that if the parties are unable to agree, then the term of the lease will be extended.
This court issued an order dated August 11, 1999 that granted a motion for partial summary judgment to the defendants, declaring that the term of the lease for the entire leased premises is extended to July 31, 2001 at which time the lease for the entire premises shall terminate and that plaintiff is obligated under the terms and conditions of such lease and amendments thereto until such termination. This order was modified by the Appellate Division, Fourth Department, by a decision of June 8, 2001, holding that “plaintiff raised an issue of fact whether the defendant breached the implied covenant of good faith and fair dealing with respect to the lease.” (284 AD2d 993, 994.)
The plaintiff is now seeking discovery of certain written items from the defendant.
II. Motion to Amend
Pursuant to CPLR 3025 (b) leave to amend a complaint shall be freely granted upon such terms as may be just. The proposed amendment adds a second cause of action for damages based upon the alleged breach of the lease by Midtown. Breach of the lease is the underlying claim by plaintiff in the original complaint for a declaratory judgment. The defendant has not presented any evidence that it will be prejudiced by this amendment.
Pursuant to CPLR 3025, the plaintiffs motion for leave to amend its complaint is granted.
III. Motion to Compel
The plaintiff, Charter One, seeks disclosure of two written communications from defendant’s attorneys, Harter, Secrest & Emery, to defendant’s agent, and a written communication between Albert B. Cupo and Robert B. Cheney dated August 26., 1998. Charter One served a notice for production of documents upon Midtown requesting, among other things, all documents relating to negotiations or discussions concerning the lease provisions at issue and specifically, a copy of the letter from Harter, Secrest & Emery that Peter Arnold shared with Phil Mucenski at their meeting held in or about March of 1998.
Midtown’s response to these discovery requests was to produce documents responsive to the request with the exception of *157 certain documents which it asserted are covered by the attorney-client privilege. Midtown states in its response to notice of production of documents as follows:
“The withheld documents are two (2) written communications from defendant’s attorneys, Harter, Secrest & Emery concerning the interpretation and application of certain provisions of the Lease in question, as well as a written communication between Albert B. Cupo to Robert B. Cheney dated August 26, 1998 discussing legal advice which they, as representatives of defendant, had received from defendant’s attorneys, Harter, Secrest & Emery regarding the subject matter of the Lease.”
The defendant, Midtown, opposes the demand for document discovery of plaintiff on the theory that these documents are exempt from disclosure either pursuant to the attorney-client privilege or as attorney work product.
Broad discretion is given to the court over the discovery process. (Baliva v State Farm Mut. Auto. Ins. Co., 275 AD2d 1030 [4th Dept 2000].) “[W]hether a particular document is or is not protected [by the attorney-client privilege or work product doctrine] is necessarily a fact-specific determination, most often requiring in camera review.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 378 [1991] [citation omitted]; Baliva, 275 AD2d at 1031.) The written communications at issue on this motion to compel have been reviewed by this court in camera.
*158 The affidavits submitted in support of this motion by Mucenski, and the affidavit submitted in opposition by Peter J. Arnold,[2] ffer conflicting evidence as to whether a Harter, Secrest & Emery document was disclosed by Arnold to Mucenski at a meeting. Due to this conflicting evidence, a hearing would be necessary to determine whether disclosure of a document actually occurred. Thereafter, the court would assess the parties’ applications based on the outcome of this hearing.
However, in order to preserve judicial resources, this court will review the application of the plaintiff in the light most favorable to its position based on the affidavit testimony of Mucenski. The court will assume for the purposes of assessing the parties’ arguments that one of the Harter, Secrest & Emery memos was voluntarily disclosed by Arnold to Mucenski for a short period of time, during which Mucenski read a portion of the document. The document did not remain in Mucenski’s possession and was returned to Arnold.
1. Attorney-Client Privilege
Documents protected by the attorney-client privilege are absolutely immune from discovery. (CPLR 3101 [b].) The attorney-client privilege exists for “confidential communication made between the attorney or his employee, and the client in the course of professional employment.” (CPLR 4503 [a]; see Spectrum Sys., 78 NY2d at 377.) In order to be effective, the communications must remain confidential.
“Disclosure of a privileged document generally waives that privilege unless the client intended to retain the confidentiality of the printed document and took reasonable steps to prevent its disclosure.” (Baliva, 275 AD2d at 1031; see Kraus v Brandstetter, 185 AD2d 300, 301 [2d Dept 1992]; Blair Communications v Reliance Capital Group, 182 AD2d 578 [1st Dept 1992].)
The disclosure of the Harter, Secrest & Emery document to Mucenski was not inadvertent.[3] Instead the disclosure was voluntary and intentional. This disclosure demonstrates that the defendant did not intend to retain the confidentiality of the privileged material and did not take reasonable precautions to prevent disclosure.
Under these particular circumstances, the defendant waived the attorney-client privilege as to the Harter, Secrest & Emery *159 document.[4] (See Manufacturers & Traders Trust Co. v Ser-votronics, Inc., 132 AD2d 392, 399 [4th Dept 1987].)
Regardless of this waiver of the privilege, and assuming that the alleged disclosure actually occurred, defendants also assert that the documents are protected as the work product of the attorney.
2. Work Product of Attorney
“The work product of an attorney shall not be obtainable.” (CPLR 3101 [c].) This section affords absolute immunity from disclosure of attorney’s work product.[5] (See Spectrum Sys., 78 NY2d at 376.) The work product of an attorney is reflected “in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.” (Hickman v Taylor, 329 US 495, 511 [1947].) It is a generally recognized policy that for an attorney to properly represent a client, the lawyer be allowed to “assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.” (Id.) A lawyer must work on a client’s behalf “with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel * * * [Otherwise,] much of what is now put down in writing would remain unwritten.” (Hickman, 329 US at 510-511.)
Waiver of the attorney-client privilege does not prevent a document from being protected as work product of an attorney. “Whether or not privileged, a record may qualify in whole or in part as attorney work product, or even trial preparation materials.” (Spectrum Sys. at 381.) Further, the effect of disclosure of a document protected by the work-product doctrine is different than the outcome of disclosure under the attorney-client privilege. “The disclosure of a document protected by the work-product rule does not result in a waiver of the privilege as to other documents.” (Matter of Baker, 139 Misc 2d 573, 575 [Sur Ct, Nassau County 1988].)
*160 Whether a document is immune from disclosure as attorney work product is necessarily fact specific. (Spectrum Sys., 78 NY2d at 381.) After review of these documents in camera, there is no question that the two internal memoranda between Har-ter, Secrest & Emery attorneys are the work product of the defendant’s counsel. These documents between counsel set forth mental impressions, legal opinions and legal theories, litigation strategies, and legal conclusions regarding interpretation of the provisions of the lease at issue between the parties. As the work product of the defendant’s attorney, these two documents, which are in the possession of Midtown, are entitled to absolute immunity from disclosure to the plaintiff. (CPLR 3101 [c].)
The plaintiff asserts that the Harter, Secrest & Emery memo containing the work product of defendant’s attorney was shown to Mucenski by Arnold at a meeting regarding the negotiations on the lease and that such disclosure waives the immunity. Again assuming that the plaintiff’s account of the disclosure of a Harter, Secrest & Emery memo is accurate, defendant allowed plaintiff to see and read a portion of a memo prepared by its attorney. Plaintiff did not retain the document in his possession. Plaintiff now requests that this court order the disclosure of the entire document, even though the total document was not revealed to plaintiff. Further, plaintiff asserts that it is entitled to another, separate and undisclosed memo prepared by the attorneys for the defendant because it addresses and offers opinions on the same subject matter as the disclosed document.
There is no question that if the Harter, Secrest & Emery document, which was voluntarily and intentionally disclosed, remained in the possession of the plaintiff, then the defendant would have no right to an order of protection or to have the document returned. (See Nab-Tern-Betts v City of New York, 209 AD2d 223 [1st Dept 1994] [release of documents to plaintiff]; In re Steinhardt Partners, 9 F3d 230, 234-235 [2d Cir 1993] [voluntary disclosure of work product to the Securities and Exchange Commission (SEC), an adversary, waives the privilege as to subsequent civil litigants].) When a party voluntarily gives to its adversary documents that share the thought processes of counsel, the work product privilege disappears. (Steinhardt Partners, 9 F3d at 235.) Courts recognize that any determinations related to waiving the work product privilege are fact specific to each case. (See Spectrum Sys., 78 NY2d at 381; Steinhardt Partners, 9 F3d at 236.)
*161 The facts here demonstrate that a document was briefly shown to Mucenski, who admits he did not read the entire document, and that the document was retained by the defendant. The strongest position of plaintiff shows only that it saw a document, which it did not identify clearly as the Harter, Secrest & Emery memo; that it read only a portion of the document; and that the document was kept by the defendant. From these facts, plaintiff seeks disclosure of the entire document that was briefly reviewed and another attorney memo issued on the same subject. Plaintiff requests this court to set aside the absolute immunity provided for the work product of an attorney and order disclosure of the attorney’s memos interpreting the provision of the lease.
The two internal Harter, Secrest & Emery memos are the work product of the attorney. Even assuming that one of these memos was revealed in part to the adversary, or was discussed with the plaintiff, this is insufficient to warrant removal of the absolute protection afforded the work product of an attorney. (See CPLR 3101 [c].) Unless the plaintiff has in its possession the written work product of defendant’s attorneys, by a voluntary and intentional disclosure, there can be no waiver of the absolute immunity from disclosure provided for attorney work product.
This court cannot allow plaintiff discovery, based on the facts presented, on documents containing defendant’s attorneys’ mental impressions, legal opinions and theories, litigation strategies, and legal conclusions. To require disclosure of such work product, set forth in internal memos between counsel, would circumvent the direct purpose of the protections provided by CPLR 3101.
3. Conclusion
The plaintiff, Charter One, also seeks disclosure of a written communication between Albert B. Cupo and Robert B. Cheney, dated August 26, 1998 (Cupo/Cheney Document). This document was withheld from disclosure on the asserted basis that this written communication between representatives of *162 the defendant corporation discusses legal advice Cupo had received from defendant’s attorneys regarding the subject matter of the lease; therefore, defendant contends that the document is protected by the attorney-client privilege.
Plaintiff argues that it is entitled to disclosure of this Cupo/ Cheney Document for two reasons: that any attorney-client privilege was previously waived by disclosure of the Harter, Secrest & Emery memorandum and that this document is between two corporate employees so does not qualify for protection under the attorney-client privilege.
1. Waiver of Attorney-Client Privilege
Plaintiff argues that the waiver by defendant, Midtown, of the attorney-client privilege on the Harter, Secrest & Emery memorandum, which involves the interpretation and application of the terms of the parties’ lease, extends to the Cupo/ Cheney Document because both documents involve the same subject matter.[6] Under plaintiffs theory, such a waiver of the attorney-client privilege by defendant regarding a Harter, Se-crest & Emery document waives the attorney-client privilege between Midtown and its counsel forever on any issue concerning the interpretation of the lease provisions.
Common law does not support such a broad waiver of the attorney-client privilege. The intentional disclosure of the Harter, Secrest & Emery memo to the plaintiff generally waives the attorney-client privilege as to that printed document.[7] (See Baliva, 275 AD2d at 1031; Manufacturers & Traders, 132 AD2d at 399.)
New York courts have, on occasion, expressed the general position that “[t]he waiver of the attorney-client privilege, however, normally compels the production of other documents protected by the privilege which relate to the same subject (Permian Corp. v United States, 665 F2d 1214; Handgards, Inc. v Johnson & Johnson, 413 F Supp 921).” (Matter of Baker, *163 139 Misc 2d 573, 576 [Sur Ct, Nassau County 1988];[8] see AMBAC Indem. Corp. v Bankers Trust Co., 151 Misc 2d 334, 340-341 [Sup Ct, NY County 1991] .)[9] The plaintiff relies upon these cases for its conclusion that the waiver of the attorney-client privilege as to the Harter, Secrest & Emery memorandum, somehow effectively waives the attorney-client privilege for all future privileged communications between defendant and its attorney regarding interpretation of the lease at issue.
In Permian Corp., the United States Court of Appeals case relied upon by the New York courts for this broad sweeping proposition, the court was determining whether the voluntary disclosure of documents to the SEC destroyed the confidentiality status of the documents when another government agency sought disclosure of the exact same documents from the SEC. (Permian Corp. v United States, 665 F2d 1214 [DC Cir 1981].) The court held that the confidential status of the attorney-client communications was destroyed when they were voluntarily disclosed to the SEC for registration purposes. (Id. at 1219.) “Under these circumstances fit is clear that the mantle of confidentiality which once protected the documents has been so irretrievably breached that an effective waiver of the privilege has been accomplished.’” (Id. at 1220 [citations omitted].)
In the instant case, there has been no disclosure of the Cupo/ Cheney Document to the plaintiff. Further, this document has not been revealed to any other third person or organization. The Cupo/Cheney Document was written five months after the allegedly disclosed Harter, Secrest & Emery memo and relates to confidential verbal communications between the attorney and the corporate client in the course of representation. Unlike the facts in Permian Corp., the defendant is attempting to protect a document from disclosure to plaintiff that has never been disclosed. The application of the plaintiffs theory that any disclosure of confidential information waives the attorney-client privilege for any documents involving the same subject matter would effectively undermine the purpose of the attorney-client privilege for allowing free flowing information between *164 counsel and client. This broad reaching theory is not supported by common law.
The court has broad discretion over the discovery process and in assessing whether a document is protected by the attorney-client privilege. (Baliva, 275 AD2d at 1031.) “In order to invoke the [attorney-client] privilege there must be an attorney-client relationship and the communications must be made in confidence for the purpose of obtaining legal advice.” (Manufacturers & Traders, 132 AD2d at 396; see Spectrum Sys., 78 NY2d at 378.) Here, there is a professional relationship with communications between client and attorney made in confidence for the purposes of obtaining legal advice regarding the lease provisions. Defendant acted in a manner consistent with its intent to retain the confidentiality of the legal advice contained in the printed document and took reasonable steps to prevent its disclosure to the plaintiff. (See Baliva, 275 AD2d at 1031; Manufacturers & Traders, 132 AD2d at 399.)
There is no evidence that defendant waived its attorney-client privilege as to this Cupo/Cheney Document by the assumed disclosure of the Harter, Secrest & Emery memorandum.
2. Is Cupo/Cheney Document Privileged?
The remaining issue regarding this memo between Cupo and Cheney is whether an internal memo between two corporate employees of Midtown containing a recitation of the legal advice communicated orally to Midtown by its attorneys constitutes material protected from disclosure by the attorney-client privilege.
The attorney-client privilege protects communications “between the attorney * * * and the client in the course of professional employment,” including communications from attorney to client. (See CPLR 4503 [a]; Spectrum Sys.,78 NY2d at 377; Rossi v Blue Cross & Blue Shield, 73 NY2d 588, 592 [1989].) The protections afforded by the attorney-client privilege must be narrowly construed. (Spectrum Sys., 78 NY2d at 377.) “The communication itself must be primarily or predominantly of a legal character.” (Id. at 378.) The Appellate Division, Fourth Department, recognized that an in camera review is necessary to determine whether documents asserted as being privileged, including memos from layperson to layperson within the personnel department, are in fact privileged. (Baliva, 275 AD2d at 1031.)
The specific question presented here is whether a document between corporate employees relaying legal advice from *165 corporate counsel is protected by the attorney-client privilege. There are no New York cases on point and both counsel cite to federal precedent.[10] “Federal courts expand attorney-client protection to third-party communications for one reason: to facilitate the attorney’s provision of legal advice to the client. See Adlman, 68 F3d at 1499; Kovel, 296 F2d at 922.” (HPD Labs. v Clorox Co., 202 FRD 410, 416 [D NJ 2001] [federal courts have considered whether the privilege applies when a legal employee acts as a conduit to and from counsel]; see John Labatt Ltd. v Molson Breweries, 898 F Supp 471, 477 [ED Mich 1995] [legal employee as a conduit to and from counsel].) Legal advice to a corporate client inherently involves dispersing the advice to corporate representatives.
Specifically when the communication is from the attorney to the client, the communications “must be made for the purposes of facilitating the rendition of legal advice or services, in the course of a professional relationship.” (Rossi, 73 NY2d at 593.) The United States District Court for the Southern District of New York sets forth general principles related to the application of the privilege to advice rendered by the attorney to a corporate client.
“[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation. ‘A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.’ SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 518 (D.Conn.) * * * appeal dismissed, 534 F.2d 1031, 1032 (2d Cir. 1976). This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege.” (Bank Brussels Lambert v Credit Lyonnais [Swisse], 160 FRD 437, 442 [SD NY 1995] [citations omitted].)
The inquiry, when there is an attorney-corporate client relationship, as to whether a document is privileged is fact specific with an appraisal being made as to whether it is protected *166 legal communications or just unprotected business communications. (Rossi v Blue Cross, 73 NY2d at 593.) The proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and it was made in order to assist in obtaining or providing legal advice or services to the client. (See ECDC Envtl. v New York Mar. & Gen. Ins. Co., 1998 WL 614478, 1998 US Dist LEXIS 8808 [SD NY].)
The application of the attorney-client privilege in the corporate setting is necessarily a fact specific determination for the court. (Rossi, 73 NY2d at 593; Baliva, 275 AD2d at 1031.) This court has reviewed in camera the Cupo/Cheney Document. This document is a written communication between corporate employees for the purpose of facilitating the rendition of legal advice in the course of the professional relationship between the attorney and the corporate client. The client is a corporation, an entity that communicates by individuals who hold positions as officers, directors, or employees. There is no one person in the corporate hierarchy that is the “client,” instead a myriad of people in executive or director positions within the corporation may be in contact with counsel on a legal matter.
Here Cheney requested that Cupo obtain legal advice from the corporation’s attorney. Cupo performed his corporate duties, contacted counsel, and received orally the requested legal advice directly from the attorney for Midtown regarding interpretation of the lease. Cupo then prepared the document in question to transmit the oral legal advice obtained from counsel to Cheney. The memo does not contain any business communications or thoughts, mental impressions, or ideas of the author; but merely relates in written form the legal -communications and advice from counsel. The communication is exclusively of a legal character.
3. Conclusion
The communication contained in the Cupo/Cheney Document which facilitates the rendition of legal advice in the course of the professional relationship between counsel and a corporate client is protected by the attorney-client privilege. The motion by plaintiff, Charter One, for an order compelling the defendant to disclose the written communication between Albert B. Cupo and Robert B. Cheney dated August 26, 1998 is denied.
*167 Order
Based upon all the papers submitted in support and in opposition to this motion, upon the above decision, and after due deliberation, it is hereby ordered that the motion of the plaintiff, Charter One Bank, F.S.B., for an order to compel disclosure by defendant of two Harter, Secrest & Emery memoranda and an August 26, 1998 memorandum between Albert B. Cupo and Robert B. Cheney is denied; and it is further ordered that the motion of the plaintiff, Charter One Bank, F.S.B., for leave to amend its complaint is granted.

. Mucenski originally identified the disclosed document as a letter handed to him by Peter Arnold at a meeting in or about early April 1998; dated late March 1998; comprising three to five pages; concerning Midtown’s duty to bargain; and believed to be written by an attorney named Dorothy Ferguson. This court’s in camera review shows that this description of the documents at issue, or any of them, is very general and nonspecific as to date, style, length, and content.

. Peter J. Arnold is the president of Kimbers IV, Inc., the managing member of defendant Midtown Rochester, LLC, a limited liability company of which Arnold personally holds a 99% membership interest.

. This conclusion is accurate only to the extent that the court is accepting for purposes of argument that plaintiffs version of the disclosure is true.

. However, there is no testimony from Mucenski sufficient to determine which of the Harter, Secrest & Emery documents was briefly reviewed. Based upon the affidavit testimony of Mucenski, it would be difficult to ascertain which document was shown to Mucenski without divulging both documents.

. A conditional protection also exists for materials prepared in anticipation of litigation or for trial under CPLR 3101 (d) (2). This conditional protection requires that “the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.” (CPLR 3101 [d] [2].)

. Again accepting for the sake of argument that the affidavit testimony of Mucenski is true that he was allowed to review a Harter, Secrest & Emery document, then, as previously determined in this decision, Midtown would have waived its attorney-client privilege as to this March 1998 confidential document. This document concerns its attorneys’ interpretation of the lease provisions.

. Again reiterating that it is assumed only for purposes of the arguments on this motion that there was a voluntary disclosure of the Harter, Se-crest & Emery document.

. In this case, the court held that the memorandum in question was not protected by the attorney-client privilege as between the fiduciaries and beneficiaries of the estate because the document was not drafted in anticipation of litigation, but instead was legal analysis of the means by which the fiduciaries could achieve a goal in the administration of the estate.

. The memorandum at issue in this case revealed that the defendant had consulted with an attorney. The court held that disclosure of a mere fact of consultation is no basis for a waiver as to the content of that consultation.

. The New York Court of Appeals described the attorney-client statute as a “mere re-enactment of the common-law rule”; thereby allowing federal precedent to be reviewed in assessing the application of this privilege. (Spectrum Sys., 78 NY2d at 377.)