OPINION OF THE COURT
Bernard J. Fried, J.
*531 By way of order to show cause, defendants, Marconi Corporation pic, Marconi Systems Holdings Inc., and Marconi Inc., move to compel the production of documents, which the plaintiffs, DH Holdings Corp. and Gilbarco, Inc., claim are protected as “privileged and work product documents.” Also sought is the deposition testimony of several individuals.
Briefly, plaintiffs seek indemnification for costs incurred in defending and settling a patent infringement case (the Touch-com action) which was filed in the United States District Court for the Eastern District of Texas in September 2003. It is undisputed that in 2001, Marconi sold its Gilbarco fuel dispenser business to DH Holdings pursuant to a stock purchase agreement, which contained an indemnification provision (art VIII). It is alleged that Marconi “did not desire to assume and control the defense of the Touchcom litigation” and that “[p]rior to settling the Touchcom litigation . . . [DH Holdings and Gilbarco] continued to keep [Marconi] fully advised of the progress of the litigation and its status.” The Touchcom case was settled on December 23, 2004.
This action, begun in January 2005 after the refusal of defendants to provide indemnification under the agreement, seeks damages representing “[p]laintiffls costs, attorneys’ fees, and expenses in investigating, defending, and settling the Touchcom litigation.” As counsel for the plaintiff put it during oral argument, “whether or not the [Touchcom] settlement was reasonable is the relevant issue here.” Also relevant, as counsel acknowledged, is the question of whether the “[attorneys’] bills, in fact, were reasonable and incurred.”
Documents
Turning first to the documents which are being sought, according to the affidavit of Thomas R. Johnson, Esq., counsel for the defendants, plaintiffs “have refused to produce several memoranda which analyzed liability of [Gilbarco] and analyzed potential damages.” These were referred to in a privilege log. It is argued that these documents — relating solely to the Touch-com litigation — are essential for “[defendants to investigate the reasonableness of plaintiffs’ actions, the settlement amount, the decision to settle and/or the amount of legal fees expended throughout the only 13 months of Touchcom Litigation.”
In opposition, plaintiffs argue that the agreement does not provide defendants “the right to access, review or obtain plaintiffs’ privileged and work product documents.” Moreover, plaintiffs have stated that:
*532 “[Ljitigation between Touchcom and Dresser-Wayne over the Touchcom Patent that is the subject of the Touchcom Action to which Gilbarco was a party is still ongoing. Thus, the waiver Marconi seeks would potentially lay open all of Gilbarco’s protected Privileged Information to Dresser-Wayne, Gilbarco’s arch competitor . . . against which it has pending litigation, as well as to unforeseeable harms to Gilbarco’s ability to defend itself in other disputes with Dresser-Wayne and other competitors.”
Plaintiffs also refer to deposition testimony, in which Marconi’s former general counsel testified that she had been advised by “plaintiffs counsel” before the settlement, of the “reasons for the settlement.” Additionally, Gilbarco’s vice-president of business development and legal and intellectual property testified “about the reasons for the settlement and his understanding of the information given to Marconi by [Gilbarco’s] lawyers for the settlement of the Touchcom Action.” And finally, the attorney who defended the Touchcom litigation for Gilbarco is available to be deposed “among other things, about the handling of the Touchcom Action, about the conversations he had with Marconi’s representatives as to the reasons for the settlement, as well as the services and expenses for which [his law firm] charged in connection with the Touchcom Action.” Based on all these reasons, plaintiffs contend that “defendants are in no way without the necessary factual information to present their purported defenses in this case.” This is challenged by the defendants who argue that “[p]laintiffs have put the issues of reasonableness of the settlement and necessity of the legal fees at issue by filing the current lawsuit” and that “[w]ithout discovery regarding the Touchcom Litigation, it is virtually impossible for Defendants to investigate the reasonableness of plaintiffs’ actions, the settlement amount, the decision to settle and/or the amount of legal fees expended throughout the only 13 months of Touchcom Litigation.”
In addition to this factual opposition, plaintiffs also contend that they have not placed the privileged information in issue and thus there is no basis for overriding the asserted privilege under the “at issue” waiver doctrine. As summarized in Arkwright Mut. Ins. Co. v National Union Fire Ins. Co. (1994 WL 510043, *11 [SD NY, Sept. 16, 1994]), this requires:
“(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting *533 party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.”
Citing to various federal decisions, and a decision from the Fourth Department, which have declined to find such a waiver, plaintiffs contend that so too here, there is no basis for an “at issue” waiver.
Close analysis of these cases shows that they are distinguishable: In Arkwright, which involved an action to recover costs associated with cleaning up environmental contaminants, the United States Magistrate Judge concluded that there was no basis for an “at issue” waiver, inasmuch National Union’s argument for overriding the privilege was that it was necessary to evaluate the claim, that there was a good faith adjustment did “not appear to turn on the advice of counsel.” (1994 WL 510043 at *12.) Allen,[1] a fraud action challenging a release involving a deferred compensation plan, concerned an argument that “by attacking the releases,” placed at issue were attorney-client conversations. Oxyn[2] was a fraud action in which the defendant “did not affirmatively claim either good faith or reliance on advice of counsel as a defense,” and the District Court recognized that “[a] party cannot, through its own allegations of fraud or bad faith, waive its adversary’s privilege.” The Allen court concluded that the communications were not “critically relevant to the issue of plaintiffs’ delay in attacking the releases,” and sustained the privilege. (Allen, 848 F Supp at 430.) TIG Ins.,[3] which involved, inter alia, professional malpractice claims against a law firm which had handled a subrogation action, denied the plaintiffs’ request to produce documents created by a successor law firm at the concluding stages of that action. The court rejected the argument that the malpractice claim “place [d] in issue all communications between TIG and its attorneys in the subrogation action,” and noted that the “alleged malpractice occurred well before [the successor] firm appeared in the subrogation case.” (1999 WL 1029712 at *1, 2, 1999 US Dist LEXIS 17607 at *2, 7.) And in Manufacturers & Traders *534 Trust Co.,[4] a suit to recover payment claimed owing under a debt modification agreement, the Fourth Department rejected the defendant’s argument that by the filing of the action, the bank was precluded from asserting an attorney-client privilege over documents inadvertently disclosed during discovery. There was no relationship between the lawsuit and the sought documents.
Finally, in Bovis,[5] a complex insurance coverage dispute arising out of a personal injury action on a construction site, one of the insurers, Tudor, counterclaimed against another insurer, AIG, seeking contribution for the 50% of the settlement paid, and attorneys’ fees incurred, with regard to one of the insureds, i.e., the owner of the site. AIG asserted that Tudor “acted in bad faith toward that insured.” (2002 WL 31729693 at *2, 2002 US Dist LEXIS at *6.) Sought by AIG were privileged communications between Tudor and its attorneys relating to the site owner, which were contended to be producible under the “at issue” doctrine. The Magistrate Judge concluded that Tudor did not waive the privilege “by injecting into this case the issue of good faith,” rather that it was AIG which had “raised the issue of . . . bad faith as a defense to Tudor’s counterclaim for reimbursement.” (2002 WL 31729693 at *17, 2002 US Dist LEXIS at *53.) While arguably Bovis is closest to the instant case, inasmuch as Marconi has affirmatively pleaded a defense that “Touchcom failed to settle the Touchcom Action in good faith and upon reasonable terms and conditions,” what stands out in Bovis is that the “bad faith” defense, or “estoppel defense,” seems the lynchpin of the decision. No reference was made concerning reasonableness, which is the central issue in the instant action.
In Royal Indent. Co. v Salomon Smith Barney, Inc. (4 Misc 3d 1006[A], 2004 NY Slip Op 50739[U] [Sup Ct, NY County 2004]), a coverage action, in which there was raised the defense of untimely notice, the court concluded that the “ ‘at issue’ doctrine” overcame an asserted privilege as to “documents regarding assessment and settlement.” (Id. at *8, 9.) Furthermore, in a footnote, it was noted that since there was “a contested issue as to the reasonableness of the . . . settlements,” disclosure of the documents was warranted. (Id. at *10 n 7.) Here, since as in *535 Royal Indern., the plaintiffs unquestionably must demonstrate that the settlement and fees were reasonable, withholding the entirety of all the documents specified in plaintiffs’ privilege log would deprive the defendants of vital information, necessary to challenge this claim. The heart of this matter is to determine if the settlement was appropriate, and, if so, was it reasonable; inquiries that, of necessity, place these documents at issue.
It is insufficient to respond, as plaintiffs have done, that the rationale for the settlement, and its reasonableness, can be tested by the testimony of Gilbarco’s vice-president, without the privileged documents. Nor is the testimony of Gilbarco’s Touch-com litigation attorney sufficient. This testimony, as to reasonableness and necessity, should be scrutinized through the lens of relevant, contemporaneous documents prepared in connection with, and to accomplish, the settlement of the Touchcom litigation. It seems to me that the plaintiffs cannot on the one hand seek indemnification for the settlement and costs, and on the other hand refuse to produce the documentary record leading to such settlement. Thus, the defendants are entitled to production of the documents listed on the privilege logs subject to the two following conditions and limitations.
(1) Since plaintiffs state that “litigation between Touchcom and Dresser-Wayne over the Touchcom Patent that is the subject of the Touchcom Litigation to which Gilbarco was a party is still ongoing,” the production of these documents is restricted to the instant action. The defendants are expressly prohibited from making them available, in any form, to any of the parties to the ongoing Touchcom litigation. Moreover, if these documents are utilized at depositions in this action, such depositions will be subject to this prohibition, and may not be made available to third parties without the express order of this court.
(2) Since plaintiffs also state that there is “trade secret” information contained in the documents, such information may be redacted before production to the defendants is made. If there arises a controversy over the redaction or redactions, which cannot be resolved by the parties, upon written request, I will either examine the disputed portions in camera, or refer it to a special referee (CPLR 3104).
Depositions
Defendants also seek an order directing the taking of additional depositions. Specifically, they want to depose: (a) employees of Gilbarco’s parent, Danaher Corporation: James *536 O’Reilly, Esq., general counsel; Patrick W Allender, executive vice-president; and H. Lawrence Culp, president and chief executive officer; (b) Gary Masse, group executive of Danaher and global business president of Gilbarco and Veeder-Root Company; and (c) Steve McSpadden, a Gilbarco engineer, who was Gilbarco’s expert witness and was deposed in the Touchcom case.[6] Plaintiff has opposed depositions of these individuals on the ground that it has already produced its vice-president, Mr. Hutchinson, “who has give[n] and will give complete testimony on behalf of plaintiffs as to the reasonableness of the Touchcom settlement and the related damages sought.” The argument is, essentially, that these further depositions are “needless and cumulative” and I should not permit the defense “to harass the senior management of Danaher in an effort to coerce a settlement.”
With regard to the witnesses other than McSpadden, at argument defendants’ counsel read an excerpt from the deposition of Mr. Hutchinson, in which he acknowledged that it was “Messrs. Culp and Allender [who] made the final decision regarding whether to settle and upon what terms.” This convincingly demonstrates the need to depose these two individuals. Moreover, defense counsel also stated that all of the five requested depositions can be taken “in one day.” In light of this statement, it does not seem to me that the requests, if granted, will cause improper harassment. I am satisfied that the depositions of Culp and Allender should be taken. Following these depositions, depositions of O’Reilly and Masse may only be noticed with leave of the court.

. Allen v West Point-Pepperell Inc., 848 F Supp 423, 428 (SD NY 1994).

. Oxyn Telecom., Inc. v Onse Telecom, 2003 WL 660848, *6, 2003 US Dist LEXIS 2671, *22 (SD NY, Feb. 27, 2003).

. TIG Ins. Co. v Yules & Yules, 1999 WL 1029712, 1999 US Dist LEXIS 17607 (SD NY, Nov. 12, 1999).

. Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d 392 (1987).

. Bovis Lend Lease, LMB, Inc. v Seasons Contr. Co., 2002 WL 31729693, 2002 US Dist LEXIS 23322 (SD NY, Dec. 5, 2002).

. At oral argument, I ordered that the transcript of this deposition be produced. If following its production there is a perceived need to further depose Mr. McSpadden, a letter application will be made to this court.