OPINION OF THE COURT
Ira B. Wabshawsky, J.
Plaintiff Delta Financial Corporation (hereinafter DFC) moves for an order granting leave to amend the complaint to include the following additional causes of action against defendant James Morrison: waste, improper personal benefit, breach of fiduciary duty, and material misstatement in Delta Funding Residual Exchange Company’s financial statements.
Defendants James E. Morrison, Delta Funding Residual Management, Inc. and Delta Funding Residual Exchange Company, LLC (hereinafter LLC) cross-move for an order pursuant to CPLR 3103 (c):
(1) (a) directing the DFC parties (Sidney A. Miller, Hugh Miller, Marc E. Miller, Richard Blass, and Arnold B. Pollard) to return or destroy all copies of the allegedly privileged document inadvertently produced by the LLC;
(b) enjoining the use of the privileged document by the DFC parties and KPMG in further proceedings; and
(2) directing that the privileged document, and all references hereto, be stricken from DFC’s pending motion for leave to amend the complaint.
Defendants’ attorneys aver that they served all nonprivileged, responsive documents on DFC and KPMG via CD in response to a notice to produce served on or about December 3, 2003. Although the document review process involved screening for privileged content, defendants produced an April 21, 2003 e-mail string between defendant Morrison and attorneys at the law *809 firm of Ropes & Gray. At that time Ropes & Gray represented the LLC. Defendants insist that the production of the e-mail was inadvertent and that they intended the document to remain privileged and confidential at all times. Defendants further allege that two identical copies of the correspondence in question were entered in their privilege log evidencing that the production of the e-mail was due to ministerial error. Defendants only learned of their mistake on or about December 19, 2005 after receiving plaintiffs within motion to amend the complaint and accompanying affidavit of Eugene R. Licker, to which the e-mail was attached as an exhibit and immediately sought its return. KPMG has agreed to destroy or return all copies of the e-mail; DFC has not.
Initially, DFC asserts that the document is not privileged. As to their first alternative argument they would contend that if the court finds that the document (e-mail string) is privileged, they believed the production of the document to be intentional and that its production constitutes a waiver of privilege. Further, even if the document is privileged and its production was not intentional, DFC argues that it falls into the fiduciary duty exception to the privilege rule and finally as their third alternative that the LLC has placed it “at issue” thereby making it discoverable.
The attorney-client privilege applies to confidential communications between clients and their attorneys made “in the course of professional employment” (CPLR 4503 [a] [1]), and such privileged communications, absent waiver, are absolutely immune from discovery (CPLR 3101 [b]; New York Times Newspaper Div. of NY. Times Co. v Lehrer McGovern Bovis, 300 AD2d 169, 171 [1st Dept 2002]; see also Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991]). “The critical inquiry is whether, viewing the lawyer’s communication in its full content and context, it was made in order to render legal advice or services to the client.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 379 [1991].)
It is clear from the face of the document that defendant Morrison’s e-mail communication with Fred Becker was for the purpose of obtaining legal advice in his capacity as an attorney with Ropes & Gray, the law firm retained to represent the LLC. It does not matter that, according to the October 29, 2001 engagement letter, the firm was retained to handle “general corporate” matters. “Th[e] privilege attaches (1) where legal advice of any kind is sought (2) from a professional legal advisor *810 in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.” (United States v Bein, 728 F2d 107, 112 [2d Cir 1984], quoting United States v Kovel, 296 F2d 918, 921 [2d Cir 1961].)
It is the burden of the proponent of the privilege to prove nonwaiver. (Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d 392, 398-399 [4th Dept 1987].) In order to succeed, defendant (LLC) must show (1) that production of the documents in question was inadvertent, (2) an intention to retain the confidentiality of privileged materials, (3) reasonable precautions to prevent disclosure, (4) a prompt objection, and (5) an absence of prejudice to defendants were a protective order to be granted. (John Blair Communications v Reliance Capital Group, 182 AD2d 578, 579 [1st Dept 1992], citing Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d at 398-400.)
Defendants have satisfied this court that the document’s production was inadvertent and not “intentional.” In his affidavit, defendants’ attorney Christopher Byrne states that during the document review all communications to or from an attorney were set aside for his personal assessment and those that were deemed privileged were removed and placed in the privilege log. (Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d 392, 399 [4th Dept 1987] [the bank’s counsel alleged that during a search of the file he discovered and removed those documents he deemed confidential and privileged].) In addition, defendants state that they intended at all times to keep the document privileged as evidenced by the precautions taken to avoid disclosure of privileged material. Furthermore,
“[t]he error counsel made was in inadequately screening the material before it was delivered to defense counsel. Notwithstanding that error, however, the fact that counsel undertook a screening procedure indicates that he took some precaution to avoid disclosure of privileged material. Disclosure caused by an error of a competent screener . . . does not evidence a lack of precautions.” (Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d 392, 399 [4th Dept 1987].)
Upon discovering the mistake (when the document was used by DFC in its motion to amend the complaint), defendants’ at *811 torney promptly objected to the disclosure. That the document was produced at least a year earlier does not cause defendants to fail on this point. Plaintiffs counsel had an ethical obligation to, at the very least, notify defendants’ counsel of the receipt of the document in order to give the LLC an opportunity to seek protective measures. (ABA Comm on Ethics and Prof Responsibility, Formal Op 05-437.)* Plaintiffs counsel does not deny recognizing the privileged nature of the document but rather assumed that defendants’ counsel intentionally produced it and therefore did not inform the LLC of its receipt.
Lastly, no prejudice to DEC will result in granting the protective order. In In re Grand Jury Investigation of Ocean Transp. (604 F2d 672, 675 [DC Cir 1979]) disclosure of privileged documents was made to the government but the plaintiff did not move for the return of them until 15 months after their production, after the recipient notified plaintiff of the privileged documents and plaintiffs counsel mistakenly stated that the production was intentional. During the interim, the government had digested and analyzed the documents and used them in questioning witnesses and the court held that the attorney-client privilege had been waived. (Id.) In the instant matter, LLC was never notified of the receipt of the document by DEC and it has not been used in questioning witnesses.
Courts have held that the attorney-client privilege does not necessarily attach when a trustee obtains legal advice concerning matters impacting upon the interests of the beneficiaries seeking disclosure “on the ground that a fiduciary has a duty of disclosure to the beneficiaries whom he is obligated to serve as to all of his actions, and cannot subordinate the interests of the beneficiaries, directly affected by the advice sought, to his own private interests under the guise of the privilege.” (Hoopes v Carota, 142 AD2d 906, 910 [3d Dept 1988].)
Because the LLC is a Delaware limited liability company, issues pertaining to fiduciary duty are governed by that law. (O’Donnell v Ferro, 303 AD2d 567 [2d Dept 2003]; Katz v Emmett, 226 AD2d 588, 589 [2d Dept 1996].) Where a
“corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the *812 corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.” (Garner v Wolfinbarger, 430 F2d 1093, 1103-1104 [5th Cir 1970].)
The corporation is not barred from asserting the privilege merely because those demanding information enjoy the status of stockholders. (Id. at 1103.)
In order for the plaintiffs to take advantage of the fiduciary duty exception, the documents which they seek must have been created while they had “mutuality of interest” with the LLC and Morrison. (Metropolitan Bank & Trust Co. v Dovenmuehle Mtge., Inc., 2001 WL 1671445, *3-4, 2001 Del Ch LEXIS 153, *9-10 [2001]; Oliver v Boston Univ., 2004 WL 944319, 2004 Del Ch LEXIS 51 [2004].) “Because the exception is premised upon common purpose and common interest, once those purposes and interests diverge, the exception no longer applies.” (Metropolitan Bank & Trust Co. v Dovenmuehle Mtge., Inc., 2001 WL 1671445, *3, 2001 Del Ch LEXIS 153, *10.) Something more than a simple disagreement between the shareholder and the director must exist before the rationale for preserving confidentiality of Morrison’s communications with the LLC’s counsel can come into play. (Id.)
In Metropolitan Bank & Trust Co., the court refrained from defining the precise limits of when “mutuality of interest” will be deemed to have expired, but was satisfied that “mutuality of interest” will necessarily be found to have lapsed by the time that the director can reasonably anticipate litigation about an identified dispute. (Id.; see also In re Freeport-McMoRan Sulphur, Inc. Shareholder Litig., 2005 WL 225040, 2005 Del Ch LEXIS 7 [2005].) “Once litigation can reasonably be anticipated, the interests of the parties are sufficiently adverse that the general partner should be able to communicate with the partnership’s counsel about the matters likely to be litigated without fear that the fiduciary duty exception might be invoked to deny continuing confidentiality to those communications.” (Metropolitan Bank & Trust Co., 2001 WL 1671445, *3, 2001 Del Ch LEXIS 153, *10.)
Once mutuality of interest has been established, the shareholder/member bears the burden of establishing good cause for the court to allow them access to, or in this case use of, the contested documents. (Continental Ins. Co. v Rutledge & Co., *813 Inc., 1999 WL 66528, 1999 Del Ch LEXIS 12 [1999]; In re Freeport-McMoRan Sulphur, Inc. Shareholder Litig., 2005 WL 225040, 2005 Del Ch LEXIS 7 [2005]; Oliver v Boston Univ., 2004 WL 944319, 2004 Del Ch LEXIS 51 [2004].) Of the seven nonexclusive factors listed in Garner (supra), Delaware courts have focused on the following three factors as particularly salient: (i) the nature of the shareholders’ claim and whether it is obviously colorable; (ii) the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; and (iii) the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing. (In re Freeport-McMoRan Sulphur, Inc. Shareholder Litig., 2005 WL 225040, 2005 Del Ch LEXIS 7 [2005]; Continental Ins. Co. v Rutledge & Co., Inc., 1999 WL 66528, 1999 Del Ch LEXIS 12 [1999] [adds a fourth factor: whether litigation strategies relating to the defense of the suit in which the application is presented may be disclosed].)
This court finds that there was a lack of the requisite mutuality of interests at the time that the communication in issue was made. Mutuality of interest does not exist merely because DEC was a member of the LLC as of that date. At that time, Morrison questioned DFC’s 2001 valuation of the excess cash flow certificates, which the LLC believes was inflated by upward of $100 million. The e-mail in question obviously seeks legal advice on how to address that problem, specifically whether DEC was entitled to continued monetary distributions under the operating agreement in light of this information, which the LLC subsequently ceased when it failed to pay the June 2003 distribution. There is no doubt that DEC and the LLC were in an adversarial stance at that time even if DEC denies being aware of it.
A waiver of attorney-client privilege may also be found where the client places the subject matter of the privileged communication at issue (see, e.g., People v Edney, 39 NY2d 620 [1976]) or “where invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the privilege would deprive the adversary of vital information.” (Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835 [2d Dept 1983], citing Connell v Bernstein-Macaulay, Inc., 407 F Supp 420 [SD NY 1976], and Hearn v Rhay, 68 FRD 574 [ED Wash 1975].)
The LLC has not placed the privileged communication at issue because it never claimed that its position was justified on *814 good-faith reliance on legal counsel. In response to a claim of bad faith by DEC, a party does not waive the privilege by stating that it believes it has a legitimate claim/defense. (John Doe Co. v United States, 350 F3d 299, 304 [2d Cir 2003].)
The court finds the communication between Ropes & Gray and Mr. Morrison was an attorney-client communication and was privileged.
Counsel for DEC should have notified the LLC of the discovery of the document when he received it providing LLC’s counsel the opportunity to move for its return. (New York Times Newspaper Div. of N.Y. Times Co. v Lehrer McGovern Bovis, 300 AD2d 169, 172 [1st Dept 2002]; ABA Comm on Ethics and Prof Responsibility, Formal Op 05-437.) The document shall be returned or destroyed and cannot be used in this motion.
The motion to amend is dismissed with leave to renew without further request of the court. Any remaining issue as to mutuality of interest is reserved for further argument and a likely hearing which will cover it as well as any other privilege log issues. At said hearing, the court would expect Mr. Morrison to testify.

 “A lawyer who receives a document from opposing parties or their lawyers and knows or reasonably should know that the document was inadvertently sent should promptly notify the sender in order to permit the sender to take protective measures.” (Id.)