*277 ORDER (Regarding Pending Motions)
TODD R. MATHA, Chief Judge.
INTRODUCTION
The Court must determine whether to grant the outstanding motions filed by the plaintiff. The Court enters this order to facilitate and explain the discovery process, including identifying the applicable procedure and law that governs the instant case. The analysis and holding of the Court follows below.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail within its May 19, 2003 Order (Denying Motion to Dismiss). For purposes of this decision, the Court notes that the defendant, Bank of America, N.A. (hereinafter Bank), by and through Attorney Thomas E. Harms, appealed the interlocutory decision of the Court on June 18, 2003. On July 10, 2003, the Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) rejected the appeal due to a failure to comply with relevant procedural requirements. Order Denying Appeal, SU 03-06 (HCN S.Ct, July 10, 2003). Thereafter, the defendant/appellant filed a July 14, 2003 motion to reconsider with the Supreme Court. On September 11, 2003, the Supreme Court declined to reverse its earlier decision. Order (Denying Mot. for Recons. & Denying Req. for Stay of Proceedings) SU 03-06 (HCN S.Ct., Sept. 11, 2003).
Consequently, the Court mailed Notice(s) of Hearing to the parties on November 25, 2003, informing them of the date, time and location of the Scheduling Conference. The Court convened the Conference on December 2, 2003 at 1:30 p.m. CST. The following parties appeared at the Scheduling Conference: Attorneys Justice E. Lindell and Brooks F. Pooley, plaintiffs counsel (by telephone), and Attorney Thomas E. Harms, defendant’s counsel (by telephone). The Court entered the Scheduling Order on December 3, 2003, setting forth the timelines and procedures to which the parties should adhere prior to trial. The Court later entered the May 6, 2004 Amended Scheduling Order pursuant to the mutual request of the parties.
On August 5, 2004, the plaintiff filed its Motion to Compel Discovery (hereinafter Plaintiffs Motion I) and accompanying legal memorandum entitled, Plaintiffs Memorandum of Law in Support of *278 Plaintiffs Motion to Compel Discovery (hereinafter Plaintiffs Memorandum I), and affidavit of counsel. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rules Id, 38.[1] The plaintiff requested an August 10, 2004 teleconference in relation to its request during which the parties agreed to convene a motion hearing. Pl.’s Mot. 1 at 1. The defendant filed the timely Defendant’s Response to Plaintiffs Motion to Compel Discovery (hereinafter Defendant’s Response I) on August 24, 2004. See HCN R. Civ. P. 19(B). Additionally, the defendant filed its Motion for Protective Order and Other Relief (hereinafter Defendant’s Motion II) on the same date accompanied by a legal memorandum entitled, Defendant’s Memorandum in Support of Motion, for Protective Order and Other Relief. Id., Rules 18, 36.
The plaintiff submitted a letter reply to the defendant’s filings on August 30, 2004. The next day, the Court convened the Motion Hearing at 10:00 a.m. CDT. The following parties appeared at the Hearing: Attorney Justice E. Lindel!, plaintiffs counsel (by telephone), and Attorney Thomas E. Harms, defendant’s counsel (by telephone)., On August 31, 2004, the Court entered its Order (Denying Motion for Protective Order) which addressed the defendant’s concern regarding pending depositions, but did not address concerns regarding transcribing a recording of an April 27, 2000 legislative meeting.
On September 14, 2004, the defendant submitted excerpts from a deposition in order to establish the point in time at which the defendant believed the plaintiffs actions “reasonably indicatefd] the prospect of litigation.” Mot. Hr’g
On September 16, 2004, the plaintiff filed its Motion for Sanctions (hereinafter Plaintiffs Motion II) and accompanying legal memorandum entitled, Memorandum of Law in Support of Plaintiffs Motion for Sanctions (hereinafter Plaintiffs Memorandum II) and affidavit of counsel. See HCN R. Civ. P. 18, 37. The defendant responded to the plaintiffs September 14, 2004 correspondence in a September 17, 2004 letter, arguing that it had complied with HCN R. Civ. P. 19(B) and that the procedural rules did not preclude a further filing, especially since the deposition had not occurred until after the August 31, 2004 Motion Hearing. Subsequently, the defendant timely filed the Defendant’s Response to Plaintiffs Motion for Sanctions (hereinafter Defendant’s Response II). See HCN R. Civ. P. 19(B). The parties filed the April 28, 2005 Stipulation, thereby resolving the remaining concerns presented in the Defendant’s Motion II.
Due to an extended period of inactivity, the Court mailed Notice(s) of Hearing to the parties on September 23, 2005, informing them of the date, time and location of a Status Plearing. The Court convened the Hearing on October 14, 2005 at 1:30 p.m. CDT. The following parties appeared at the Status Hearing: Attorney Justice E. Lindell, plaintiffs counsel (by telephone), and Attorney Thomas E. Harms, defendant’s counsel (by telephone).[2]
*279 APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. I—Territory and Jurisdiction
Sec. 1. Territory. The territory of the Ho-Chunk Nation shall include all lands held by the Nation or the People, or by the United States for the benefit of the Nation or the People, and any additional lands acquired by the Nation or by the United States for the benefit of the Nation or the people, including but not limited to air, water, surface, subsurface, natural resources and any interest therein, notwithstanding the issuance of any patent or right-of-way in fee or otherwise, by the governments of the United States or the Ho-Chunk Nation, existing or in the future.
Sec. 2. Jurisdiction. The jurisdiction of the Ho-Chunk Nation shall extend to all territory set forth in Section 1 of this Article and to any and all persons or activities therein, based upon the inherent sovereign authority of the Nation and the People or upon Federal law.
Art. Ill—Organization of the Government
Sec. 3. Separation of Functions. No branch of government shall exercise the powers and functions delegated to another branch.
Sec. 4. Supremacy Clause. This Constitution shall be the supreme law over all territory and persons within the jurisdiction of the Ho-Chunk Nation.
Art. TV—General Council
See. 1. Powers of the General Council. The People of the Ho-Chunk Nation hereby grant all inherent sovereign powers to the General Council. All eligible voters of the Ho-Chunk Nation are entitled to participate in General Council. Sec. 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Art. V—Legislature
Sec. 1. Composition of the Legislature.
(c) The Legislature shall select from among its Members a Vice President to serve throughout such Member’s term. The President shall preside over meetings of the Legislature. The Vice President shall preside over meetings of the Legislature in the absence of the President and at such times the Vice President shall retain the power to vote.
Sec. 2. Powers of the Legislature. The Legislature shall have the power;
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(i) To negotiate and enter into treaties, compacts, contracts, and agree- *280 merits with other governments, organizations, or individuals;
Art. VII—Judiciary
Sec. 5. Jurisdiction .of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Powers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
Sec. 7. Powers of the Supreme Court,.
(b) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
HO-CHUNK NATION JUDICIARY ESTABLISHMENT AND ORGANIZATION ACT, 1 HCC § 1
Subsec. 4. Jurisdiction. The Ho-Chunk Judiciary shall exercise jurisdiction over all matters with the power and authority of the Ho-Chunk Nation including controversies arising out of the Constitution of the Ho-Chunk Nation; laws, statutes, ordinances, resolutions, and codes enacted by the Legislature; and such other matters arising under enactments of the Legislature or the customs and traditions of the Ho-Chunk Nation. The jurisdiction extends over the Nation and its territory, persons who enter its territory, its members, and persons who interact with the Nation or its members wherever found.
Subsec. 5. Rules and Procedures.
c. The Judiciary shall have exclusive authority and responsibility to employ personnel and to establish written rules and procedures governing the use and operation of the Courts.
d. All matters shall be tried in accordance with the Ho-Chunk Rules of Procedures And [sic ] the Ho-Chunk Rules of Evidence which shall be written and published by the Supreme Court and made available to the public.
CIVIL PRACTICE LAW AND RULES
Art. 31—Disclosures
Sec. 3101. Scope of disclosure.
(a) Generally. There shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof, by:
(1) a party, or the officer, director, member, agent or employee of a party;
(2) a person who possessed a cause of action or defense asserted in the action;
(3) a person about to depart from the state, or without the state, or residing at a greater distance from the place of trial than one hundred miles, or so sick or infirm as to afford reasonable grounds of belief that he or she will not be able to attend the trial, or a person authorized to practice medicine, dentistry or podiatry who *281 has provided medical, dental or podia-trie care or diagnosis to the party demanding disclosure, or who has been retained by such party as an expert witness; and
(4) any other person, upon notice stating the circumstances or reasons such disclosure is sought or required.
(b) Privileged matter. Upon objection by a person entitled to assert the privilege, privileged matter shall not be obtainable.
(c) Attorney’s work product. The work product of an attorney shall not be obtainable.
(d) Trial preparation.
(2) Materials. Subject to the provisions of paragraph one of this subdivision, materials otherwise discoverable under subdivision (a) of this section and prepared in anticipation of litigation or for trial by or for another party, or by or for that other party’s representative (including an attorney, consultant, surety, indemnitor, insurer or agent), may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.
Art. 45—Evidence
Sec. 4503. Attorney.
(a)l. Confidential communication privileged. Unless the client waives the privilege, an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action, disciplinary trial or hearing, or administrative action, proceeding or hearing conducted by or on behalf of any state, municipal or local governmental agency or by the legislature or any committee or body thereof. Evidence of any such communication obtained by any such person, and evidence resulting therefrom, shall not be disclosed by any state, municipal or local governmental agency or by the legislature or any committee or body thereof. The relationship of an attorney and client shall exist between a professional service corporation organized under article fifteen of the business corporation law to practice as an attorney and counselor-at-law and the clients to whom it renders legal services.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Ch. I—Introduction to the Rules
Rule 1. Scope of Rules.
The Ho Chunk Nation Constitution, Art. VII, Section 7(B) requires that the HCN Supreme Court establish written rules for the Judiciary. These rules, adopted by the Supreme Court of the Ho-Chunk Nation, shall govern the proceedings of the Trial Courts in all actions and proceedings. The judges of the Trial Court may look to Ho-Chunk customs and traditions for guidance in applying justice and promoting fairness to parties and witnesses.
*282 Rule 2. Liberal Construction.
These rules shall be liberally construed to secure a just and speedy determination of every action.
Ch. II—Beginning an Action
Rule 3. Complaints.
General. A civil action begins by filing a written Complaint with the clerk of court and paying the appropriate fees. The Complaint shall contain short, plain statements of the grounds upon which the Court’s jurisdiction depends; the facts and circumstances giving rise to the action; and a demand for any and all relief that the party is seeking. Relief should include, but is not limited to the dollar amount that the party is requesting. The Complaint must contain the full names and addresses of all parties and any counsel, as well as a telephone number at which the Complainant may be contacted. The Complaint shall be signed by the filing party or his/her counsel, if any.
Ch. Ill—General Rules for Pleading
Rule 18. Types of Motions.
Motions are requests directed to the Court and must be in writing except those made at trial. Motions based on factual matters shall be supported by affidavits, references to other documents, testimony, exhibits or other material already in the Court record. Motions based on legal matters shall contain or be supported by a legal memorandum, which states the issues and legal basis relied on by the moving party. The Motions referenced within these rules shall not be considered exhaustive of the Motions available to the litigants.
Rule 19. Filing and Responding to Motions.
(B) Responses. A Response to a written Motion must be filed at least one (1) day before the hearing. If no hearing is scheduled, the Response must be filed with the Court and served on the other parties within ten (10) calendar days of the date the Motion was filed. The party filing the Motion must file any Reply within three (3) calendar days.
Ch. V—Discovery
Introduction. Discovery is the process used among parties to uncover evidence relevant to the action, including the identity of persons having knowledge of facts. Discovery may take place before an action has been filed and may be used for the purpose of preserving testimony or other evidence which might otherwise be unavailable for at the time of trial. Discovery may include written interrogatories, depositions, and requests for the production of documents and things. It is the policy of the Court to favor open discovery of relevant material as a way of fostering full knowledge of the facts relevant to a case by all parties. It is the intent of these rules that reasonable [sic ] open discovery will encourage settlement, promote fairness and further justice. There is an ongoing obligation by any party subject to a discovery request, which continues up to and through the trial, to supplement any response previously answered if new or freshly discovered material previously unavailable is discovered or revealed to them.
Rule 32. Interrogatories.
A party may submit interrogatories (written questions) to other parties. The requesting party must receive the responding party’s written answers, un *283 der oath, within twenty-five (25) calendar days of receiving them. The responding party must include facts he/she knows, facts available to him/her, and give opinions, if requested.
Rule 33. Depositions.
A party may take a deposition (testimony, under oath and recorded) of a deponent (another party or witness) after giving at least five (5) calendar days notice of the time and place where the deposition will occur to all parties and the deponent. All parties may ask the deponent questions. Depositions may take place by telephone and be recorded steno graphically [sic j, by tape recording or other means if the parties agree or the Court so orders.
Rule 34. Requests for Documents and Things.
A party may request another party to produce any documents or things within is/her [sic ] possession or control for the purpose of inspection and/or copying. This includes permission to enter onto land for testing. The responding party must make the documents or things available to the requesting party within twenty-five (25) calendar days of the date of receiving the request.
Rule 36. Protective Outers.
For good cause, the Court on its own motion or at the request of any party or witness, may enter an Order to protect a party or other person from undue annoyance, embarrassment, oppression or undue burden or expense.
Rule 37. Non-Compliance.
If a party fails to appear or respond as requested under these rules, a party may request or the Court may issue an Order requiring a response and imposing costs, attorney’s fees, and sanctions as justice requires in order to secure compliance.
Rule 38. Power to Compel.
The Court retains the inherent authority to compel disclosure of material it has cause to believe is relevant to the matter before it.
Ch. VI—Trials
Rule 42. Scheduling Conference.
Scheduling Order. The Court may enter a scheduling order on the Court’s own motion or on the motion of a party. The Scheduling Order may be modified by motion of a party upon a showing of good cause or by leave of the Court.
Ch. VII—Judgments and Orders
Rule 54. Default Judgment.
(A) General. A Default Judgment may be entered against a party who fails to answer if the party was personally served in accordance with Rule 5(C)(1)(a)(i) or 5(C)(1)(a)(ii) or obtained judicial authorization to pursue other means of service such as publication or if a party fails to appear at a hearing, conference or trial for which he/she was given proper notice. A Default Judgment shall not award relief different in kind from, or exceed the amount stated in the request for relief. A Defa.ult Judgment may be set aside by the Court only upon a timely showing of good cause.
Ch. VIII—Enforcement and Remedies
Rule 68. Stays Pending Appeal.
The Trial Court may delay execution of the final Order or Judgment during the appeal on its own motion or on the request of either party if a bond is given *284 or other conditions prescribed by the Court are met that protect the interests of the party whose favor the final Judgment or Order is entered.
FEDERAL RULES OF EVIDENCE[3]
Art. V—Privileges
Rule 501. General Rule.
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
Art. IV Relevancy and Its Limits
Rule 401. Definition of “Relevant Evidence”.
“Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
FINDINGS OF FACT
L The parties received proper notice of the August 31,2004 Motion Hearing.
2. The plaintiff, Ho-Chunk Nation (hereinafter HCN or Nation), is a federally recognized Indian tribe with principal offices located on trust lands at the HCN Headquarters, W9814 Airport Road, P.O, Box 667, Black River Falls, WI. See 70 Fed.Reg. 71194 (Nov. 25, 2005).
3. The defendant, Bank, is a State of Delaware corporation with principal offices located at Bank of America Corporate Center, 100 North Tryon Street, 18th Floor, Charlotte, NC 28255. Am. Convpl., CV 02-93 (Oct. 21, 2002) at 3.
4. On January 25, 2000, the HCN Legislature (hereinafter Legislature), acting on behalf of the plaintiff, adopted a resolution conferring signature authority upon its Vice President to enter into the Credit Agreement (hereinafter Contract) with the defendant according to the following terms:
NOW, THEREFORE, BE IT RESOLVED, the Nation shall enter into a Credit Agreement with the Banks and the Agent in substantially the form presented to the Legislature at this meeting of January 25, 2000 under which the Nation may obtain revolving loans and become obligated to reimburse the Agent and the Banks on letters of credit issued for the account of the Nation up to $45,000,000 in aggregate amount; and the Vice President of the Nation, are [sic ] hereby authorized and directed at any time and from time to time to execute and deliver to the Banks such Credit Agreement and any promissory notes, security agreements, subordination agreements, pledge agreements, reimbursement agreements, or other agreements and documents as may be contemplated or required pursuant to such Credit Agreement or otherwise, all *285 in such form presented to this meeting, and hereafter, pursuant to the [AJgent’s request under Section 5.12 of the Credit Agreement, as such officer may determine and approve (such determination and approval to be established conclusively by such officer’s execution and delivery of such Credit Agreement and any such related documents and instruments).
HCN Leg. Res. 01-25-00H; see also Const, Art. V, §§ 1(c), 2(i).
5. On January 31, 2000, the plaintiff formally executed the Contract when former Vice President Clarence P. Pettibone affixed his signature to such document. Def. Bank of Am.’s Mot. to Dismiss Made by Special Appearance (hereinafter Defendant’s Motion I), CV 02-93 (Jan. 9, 2003), Attach. A.
6. On September 26, 2000, the Legislature, acting on behalf of the plaintiff, adopted a resolution conferring signature authority upon its Vice President to enter into the ISDA [“International Swap Dealers Association, Inc.”] Master Agreement (hereinafter Agreement) with the defendant according to the following terms:
NOW THEREFORE, BE IT RESOLVED that the form, terms and provisions of the ISDA Master Agreement between the Bank of America, N.A. (“the Bank”) and the Nation (“the Agreement”), by which this Nation may enter into interest rate, commodity and currency exchange transactions with the Bank, be, and hereby is [sic ], in all respects approved and authorized; and that either of [sic ] the President or Vice President is authorized to execute and deliver in the name and on behalf of the Nation, agreements in substantially the form of the Agreement, with such changes therein; [sic] as the officer executing the same shall approve, as evidenced by his execution thereof; provided that such signator shall obtain Legislative authorization for any change materially affecting the Nation’s rights or obligations under the Agreement;
HCN Leg. Res. 09-26-00C; see also Const. Art. V, §§ 1(c), 2(i).
7. On November 7, 2000, the plaintiff formally executed the Agreement when former Vice President Pettibone affixed his signature to such document. Def.’s Mot. I, Attach. B.
8. The Agreement includes the following provision entitled, Governing Law: “[t]his Agreement will be governed by and construed in accordance with the law specified in the [ISDA] Schedule [to the Master Agreement].” Id. at 10. The Schedule specifies that “[t]his Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws doctrine).” Id., Attach. C at 6.
9. On or about April 22, 2002, Michael Fitzpatrick, current Managing Director of Virchow Krause Capital, LLC, met with representatives of the defendant, Craig R. Tonies, Marketer, and client manager James Baka. Pl.’s Supplemental Answers to Def.’s Interrogs. & Doc. Requests—Set I, CV 02-93 (July 13, 2004) at 8; see also Pl.’s Mot. I, Aff., Attach. H at 2, L at 2. Mr. Tonie recounts the conversation as follows in an April 26, 2002 interoffice electronic mailing:
On April 22, the client manager and I met with the consultant to discuss a claim by the client that the hedge is 'improperly structured. According to the consultant, it was the Ho-Chunk’s intention to hedge 50% of the loan on an amortizing basis. The consultant has provided a copy of the minutes of the 4-27-00 Council^ i.e., legislative,] meeting that support the position. Our documentation is clean; signed confirmation, *286 ISDA Master and Schedule. The client has asked that we amend the existing trade to reflect 50% of the scheduled principal balance as well as to reimburse for monies paid (as a result of the higher notional schedule) since the trade date.
Pl.’s Mot. I, Aff., Attach. L at 2.
10. On or about April 24, 2002, Virchow Krause & Company, LLP, a certified-public accounting and consulting firm, issued its Ho-Chunk Nation Debt & Investment Analysis in which it deduced the following:
The swap structure has several flaws. First, according to Treasury personnel, the notional: amount of the swap was intended to hedge 50% of the loan amount from Bank of America. The actual contract is for a flat.$22.5 million, which does not decline based on the reduction in the line of credit. By July 1, 2002, the swap amount will exceed the total obligation owed to Bank of America, leaving the Nation unnecessarily in an excess hedge position. Under current interest rate conditions, this represents a contingent liability to the Nation.
Am, Comp., Attach. D at 2.
11. On or about April 24, 2002, Mr. Tonies informed a Managing Director of the defendant, Jeff G. McNeil, of the substance of a conversation between former in-house legal counsel of the defendant, Attorney Robert G. Lendino, and Mr. Fitzpatrick within an interoffice electronic mailing, stating: “Bob spoke w/the consultant and told him we would be doing our due diligence and get back to him with an update on Friday[, April 26, 2006], He expects that we will need to do a conference call with them some time (sic ] next week.” Pl.’s Mot. I, Aff., Attach. K.
12. On or about May 1, 2002, Mr. McNeil summarized a teleconference discussion that occurred earlier in the day amongst the parties in an interoffice electronic mailing to defendant’s employee, Gerhard Seebacher, as follows:
Bob 1,endino, Craig Tonies, Kerry Jor-danf, Marketer,] and I were on a teleconference call today with Mike Fitzpatrick (consultant with Virchow Krause), Sheila Corbine ([former] attorney general of the Ho-Chunk Nation), Sandy Pl[a]wman ([former] Treasurer of the [N]ation) and Lisa Goeh[anour] ( [former] Treasury staffer) to discuss the issue surround [sic ] the swap between Bank of America and the Ho-Chunk. The Ho-Chunk contend that they believed at execution of the swap that they were hedging half of the Bank of America loan—this is reflected in the minutes of the Tribal meeting. Goch[anour], who is the only person from the tribe still in the capacity she held at the time, says that she remembers it that way (the then-current Treasurer is no longer in office). There seemed to be little direct communication from the Tribe to Kerry that having their swap amortize was indeed their intention. Kerry stated on the call that she had been discussing hedging the aggregate debt when talking about fixed/floating mix, starting back in February of 2000 (the deal was executed in April 2000).
We asserted that it was our feeling that there was clearly a misunderstanding with regards to the issue. We also noted that the signed documentation existed and that settlements had been made for the last 1.75 years. There was little reply to those points-they are focusing on what is in the tribal minutes and their understanding of the deal. At the end of the conversation, the attorney general still asserted that they should be “made whole” by recuperating the excess settlement amounts from the past and by restructuring the swap to meet what they thought they had. She did say, however, that if there was more *287 than one way to be made whole, they would be willing to consider the alternatives (don’t know what that really means).
Id, Attach. J.
13. On or about June 28, 2002, former Ho-Chunk Nation Department of Justice Attorney Joseph M. Paiement drafted a correspondence to in-house counsel of the defendant, Attorney Jennifer R. Heath, for the purpose of rejecting a settlement offer. Attorney Paiement notes:
I understand that Bob L[e]ndino is no longer employed with the Bank of America and that you will be handling resolution of this dispute going forward. As I indicated during our conversation, the Ho-Chunk Nation is unwilling to accept Bank of America’s offer to satisfy half of the total losses sustained by the tribe as a result of the discrepancy in the notional amount of the swap agreement. With total damages now estimated to be in excess of $800,000, the Nation would incur an unacceptable shortfall.
If Bank of America is willing to reconsider its position, please contact me.
Id, Attach. C.
14. On September 27, 2002, the Court accepted the filing of the plaintiffs initial pleading that it signed and mailed to the Court on September 26, 2002. Compl., CV 02-93 (Sept. 27, 2002).
15. On September 26, 2002, the plaintiff served the Plaintiffs Interrogatories and Request far Production of Documents, Set I (hereinafter Plaintiffs Discovery Request) upon the defendant. Pl.’s Mem. I at 3; see also HCN R. Civ. P. 32, 34. The Plaintiffs Discovery Request includes the following individual interrogatories that remain in contention between the parties:
a. Identify all documents, including internal [Bank] e-mail, voicemail, memo-randa, and meeting minutes, which refer or relate to the Swap.
b. Identify all other “swap” or “hedging” agreements entered into by [the Bank].
Pl.’s Disc. Req., CV 02-93 (Sept. 27, 2002) at 7 (numerical designations modified). Furthermore the plaintiff requested production of the same in the following manner:
a. All documents, including internal [Bank] e-mail, voicemail, memoranda, and meeting minutes, which refer or relate to the Swap.
b. All documents setting forth, referring, or relating to all other “swap” or “hedging” agreements entered into by [the Bank],
Id at 9 (numerical designations modified). In relation to the foregoing interrogatories and requests for documents, the plaintiff imposed the following condition concerning the designated timeframe: “[ujnless otherwise specified, each discovery request set forth herein calls for information for the period commencing June 1, 1999, and continuing up to and including the date these discovery requests are answered.” Id at 5.
16.On October 7, 2003, the defendant served the Defendant’s Amended, Answers to Interrogatories and Responses to Request for Production of Documents, Set 1 (hereinafter Defendant’s Amended Discovery Response) upon the plaintiff.[4] Pl.'s Mem. I at 3. The Defendant's Amended *288 Discovery Response includes the following individual responses to the individual interrogatories in the order identified above:
a. An answer to this interrogatory may be derived or ascertained by Plaintiff from the documents produced in response to Document Request [a].
b. Defendant objects to this request on the grounds that it is overly broad, unduly burdensome, seeks irrelevant and immaterial information beyond the scope of the claims alleged, is not reasonably designed to lead to the discovery of admissible evidence, and seeks the disclosure of confidential business information.
Def.’s Am. Disc. Resp. at 8-9 (numerical designations modified). In addition, the defendant provided the following individual responses to the individual requests for documents in the order identified above:
a. Documents responsive to this request will be produced at a time and place mutually agreeable to the parties.
b. Defendant objects to this request on the grounds that it is unduly burdensome, seeks irrelevant and immaterial information beyond the scope of the claims alleged, is not reasonably designed to lead to the discovery of admissible evidence, and seeks the disclosure of confidential business information.
Id. at 12 (numerical designations modified). In conjunction with the foregoing answers, the defendant asserted the following general defense: “Defendant objects to each and every request to the extent that it calls for the disclosure of information or communications protected by the attorney-client and attorney work product privileges.” Id at 1
17.On or about November 18, 2003, the defendant complied with its above assertion concerning I nterrogatory/Request for Documents (a), producing a document listing entitled, Defendant’s Privilege Log, which included several interoffice electronic mailings and two (2) handwritten notes, but redacted or wholly excluded each item identified as Documents 1-11. Pl.’s Mot. I, Aff., Attach. I-R; see also Pl.'s Mem. I at 5.
18. In relation to the disclosed documents, the defendant asserts that Documents 1-4 and 6-11 are conditionally privileged since “prepared in anticipation of litigation or for trial by or for the Bank, its representatives or its attorney.” Def.’s Resp. I at 14 (citing N.Y. C.P.L.R. 3101(d)(2)). In addition, the defendant asserts that Documents 3-5 and 11 are entitled to attorney-client privilege since “compris[ing] communications among representatives of the Bank for the purpose of disseminating legal advice from corporate counsel.” Id. at 14-15 (citing Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C., 191 Misc.2d 154, 165-66, 738 N.Y.S.2d 179 (N.Y.Sup.Ct,2002)).
19. The defendant concedes that legal counsel did not prepare any of the identified documents, id, at 15, 20, but maintains that Documents 3-5 and 11 contain “communications among corporate employees for the purpose of disseminating legal advice from corporate counsel.” Id. at 21 (citing Charter One Bank, 191 Misc.2d at 165-66, 738 N.Y.S.2d 179).
20. On June 22, 2004, the parties conferred regarding the unresolved discovery issues, and plaintiffs counsel agreed to narrow Interrogatory/Request for Documents (b) by proposing two (2) alternatives, which defendant’s counsel characterized as follows in a June 29, 2004 correspondence:
First that the request be limited to trades where the payment stream on the notional amount was computed using a fixed interest rate vs. a variable interest rate....
*289 Second, that the discovery request be a subset that somehow addresses either trades structured on an amortizing or a non-amortizing notional amount. Your though [sic ] was that perhaps reviewing trades with one of these characteristics might meet your objectives.
Pl.'s Mot. I, Aff., Attach. F at 2; see also id., Attach. G at 1. Defendant’s counsel rejected the first alternative on the following basis: “As I mentioned to you I do not view this as a meaningful limitation. Since all interest rate swaps by definition have that fixed vs. variable interest rate characteristic, this suggestion does not in any way limit your prior request.” Pl.’s Mot. I, Aff., Attach. F at 2. Defendant’s counsel rejected the second alternative on the following basis:
I do not believe that this limitation creates any manageable subset or alleviates the problems associated with the breadth of your request. I have determined from the Bank the following information on the number of currently existing trades on the books of the Bank:
Non-amortizing—34,229 trades for a total notional amount of $4,609,129,360,289 Amortizing-5,842 trades for a total amount of $120,032,609,381.
This reflects only a snapshot of the total amount of information requested. Since such trades are created, expire or are reversed on a daily basis, if we would attempt to look at all of the transactions which existed between June 1, 1999 and the date of our discovery answers, the actual volume of data requested would be multiple times these figures.
Needless to say we are talking hundreds of thousands of transactions with notional amounts well over one hundred trillion dollars. Any attempt to produce, let alone analyze, this staggering amount of data would in additional [sic ] to creating all of the problems previously raised by my objections, create a burden so extreme as to be unmanageable by either party.
Id. at 2-3.
21. On July 6, 2004, plaintiffs counsel disputed the above characterization, and clarified that the plaintiffs proposal required “the Bank to produce information regarding any swap agreements by the Bank that have an underlying self-reducing credit facility similar to the reducing revolving credit facility entered into between the Bank and the Nation.” Id., Attach. G at 2. Plaintiffs counsel continued:
First, it seems clear that if other swap agreements with underlying reducing credit facilities entered into by your client have notional amounts that decrease in parity with the underlying credit facility, then it is more likely than not that the swap between your client and the Nation was intended to and/or should have similarly decreased in parity with the reducing revolving credit facility. Second, your client has given no suggestions as to how this request may be narrowed. I ask that your client produce documents and information regarding other swap agreements as narrowed.

Id.

22. On July 20, 2004, defendant’s counsel offered this response to the preceding clarification:
I would repeat that this request is overly broad.... I have struggled with the concept of narrowing the request, but the practical problem is that every swap is unique because it is based on the individual circumstances of the persons or entity entering into the swap and that person or entities [sic] tolerance for interest rate risk.
*290 Id., Attach. H at 1. Defendant’s counsel proposed “hold[ingj this issue in abeyance” pending retention of an expert who might suggest an even narrower production of statistical evidence. Id.; see also LPER at 2, 10:18: lfi CDT.
23. On August 31, 2004, plaintiffs counsel informed the Court that on August 30, 2004, he contacted defendant’s counsel and
suggested that the Bank provide the Nation, instead of with the actual documents and information regarding similar swaps, that they would provide us with sort of statistical information that would allow us to discover for the swaps that are similar to ours, if any, how many of them decreased and how many of them didn’t decrease.
Id, at 1, 10:12:18 CDT. The plaintiff hoped that this most recent narrowing of Interrogatory/ Request for Documents (b) would placate the defendant’s confidentiality and breadth of request concerns. Defendant’s counsel asked that the Court withhold a ruling on this issue pending discussion with his client, but neither party has presented any subsequent stipulation. Id. at 7, 1.1:02:27 CDT.
24. On September 2, 2004, the plaintiff took the deposition of Constance Schol-field, an employee of defendant’s counsel, Moss & Barnett, after having provided notice on August 6, 2004. See HCN R. Civ. P. 33. The Notice of Taking Deposition of Defendant Bank of America Corporation, N.A. stated, in relevant part, the following: “Defendant shall designate and make available for deposition ... other persons who consent to testily on its behalf concerning ... Defendant’s efforts to locate and produce documents, and the origin of document B0A00142.” Pl.’s Mot. II, Af., Attach. A. One day earlier, defendant’s counsel informed plaintiffs counsel that Ms. Scholfield would appear “solely to convey information provided by Bank of America in response to the [above item within] the deposition notice and for no other purpose.” Id., Attach. B at 2. Defendant’s counsel also noted that “the Bank intends to produce another witness on Friday, September 10, 2004 to respond to the other portions of the deposition notice.”[5] Id,
25.On September Í0, 2004, the plaintiff took the deposition of Mr. Tonies, and sought testimony concerning the April 2002 meeting, which is the subject of Finding of Fact No. 9. Plaintiffs counsel engaged the deponent in the following line of questioning:
Pl.’s Att’y: How did you—what were the circumstances that led up to you taking part in this conference with Mike Fitzpatrick in April of 2002?
Deponent: Jim Baka asked me to attend the meeting at Virchow Krause’s offices in Milwaukee with Michael Fitzpatrick and another name that escapes me from the firm to discuss the interest rate swap....
Pl.’s Att’y: And what was discussed at the meeting?
Deponent: That Virchow Krause had been hired to do a financial overview for the Ho-Chunk Nation, that it included among other things an analysis of their debt and hedging instrument. In Virchow Krause’s opinion the *291 hedge that had been provided was inappropriate and not consistent with the members of the tribe that they had spoken with and their understanding.
Pl.’s Att’y. Okay. And after you attended this meeting in April 2002 was— was Jim Baka present?
Deponent: He was....
Pl.’s Att’y: And after you attended this meeting did you begin an internal investigation into the circumstances surrounding the execution of the swap?
Deponent: I did immediately.
Pl.’s Att’y: And how did you start that?
Deponent: By contacting my manager Jeff McNeill.
Pl.’s Att’y: And what did you talk to Mr. McNeill about?
Deponent: The nature of their complaint and threats.
Pl.’s Att’y: And did they make any threats at the meeting?
Deponent: Yes. That the Nation expected to be made whole and was very adamant about pursuing this whether it be through settlement or litigation sort.
Pl.’s Att’y: And who represented that?
Deponent: Either Michael Fitzpatrick or the other individual from that firm.
I’l.’s Att’y: And at that time did they say that the Nation would be—would pursue this into litigation if it was necessary?
Deponent: Yes. It was certainly part of the conversation that this was a very serious matter that they intended to see through through one means or the other....
Pl.’s Att’y: Did they seem threatening to you or was it a matter of fact statement that this was a serious matter?
Deponent: Clearly threatening.
Pl.’s Att’y; Thank you. Now, when you contacted Mr. McNeill regarding the complaint that had been raised by the Ho-Chunk Nation did he give you any instructions?
Deponent: Yes. That we needed to research the documentation that we had regarding the trade, that we needed to speak with Kerry Jordan and Jim Baka regarding circumstances around the trade, and that we should notify our in-house legal counsel who at the time was Bob Lendino.
PL’s Att’y: And did you accomplish each of these tasks?
Deponent: I did.
Dep. of Craig R. Tonies, CV 02-93 (Sept. 10, 2004) at 138-40.
26. On September 16, 2004, the plaintiff requested that the Court impose monetary sanctions upon the defendant for its designation of a deponent, Ms. Scholfield, who “had virtually no knowledge of the Bank’s efforts to locate and produce responsive documents,” and whose “total preparation for [the] deposition on this subject consisted of a fifteen minute telephone conversation with representatives of the Bank the day before her deposition.” Pl.’s Mem. II at 1; see also HCN R. Civ. P. 37.
27. On September 21, 2004, the defendant objected to the plaintiffs request, citing reliance upon the Court’s recent decision wherein it stated that “[t]he plaintiffs Notice of Taking Deposition does provide sufficient guidance to the defendant as to what individual representatives of the corporate entity should be made available for deposition.” Def.’s Resp. II at 2 (quoting Order (Denying Mot. for Protective Order) at 2). The defendant claimed objective compliance with the deposition notice, and blamed any resulting frustration upon “the lack of precision in *292 the Notice and not a lack of production by the Bank.” Id. at 5.
DECISION
The Court established the bases for its exercise of subject matter jurisdiction within the May 19, 2003 Order (Denying Motion to Dismiss). The Court now offers further clarification of its jurisdictional authority as it relates to the issue of governing law. The Constitution sets forth the parameters of the Court’s limited jurisdiction, namely: “over all cases and controversies ... arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation.” Const., Act. VII, § 5(a); see also HCN Judiciary Establishment & Okg. Act (hereinafter Judiciary Act), 1 HCC § 1.4; Ho-Chunk Nation v. Harry Steindorf et al., CV 99-82 (HCN Tr. Ct., Feb. 11, 2000), aff'd, SU 00-04 (HCN S. Ct., Sept. 29, 2000). Consequently, when the Court confronts a contractual dispute, it must be capable of identifying a fount of law from which the cause of action flows. In this regard, the Court has previously indicated that the Legislature may create law in conjunction with and as a consequence of its constitutional authority to enter into a contract or agreement. Ho-Chunk Nation v. B & K Builders, Inc. et al., CV 00-91, 2001 WL 36153791, 3 Am. Tribal Law 381, 388-89 (HCN Tr. Ct., June 20, 2001) at 10-11; see. also Const., Art. V, § 2(a), (i).
In the instant case, the Legislature entered into the Agreement, thereby elevating its terms and conditions to the status of substantive law, including the incorporation of the “laws of the State of New York.” Def.’s Mot. I, Attach. C at 6. The Court accordingly derived its subject matter jurisdiction over the cause of action by virtue of the logical interplay of constitutional provisions.[6] The Legislature pronounced law, and the plaintiff brought its suit under the provisions of such law. The Court accepted this filing without question since “[a]ny such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall tíe filed in the Trial Court before it is filed in any other court.”[7] Const., Art. VII, § 5(a).
The Constitution provides the overarching law in each and every action arising within the jurisdiction of this Court. No branch of government may permissibly remove constitutional law from a contractual arrangement. Const., Arts. I, § 1-2, III, § 4. The defendant should have reasonably acquainted itself with the fundamental prevailing law of the Nation. See Marx Adver. Agency, Inc. v. Ho-Chunk Nation et al., CV 04-16 (HCN Tr. Ct., Sept. 10, 2004) at 9, aff'd, SU 04-07 (HCN S.Ct, Apr. 29, 2005). Any individual can view the full text of the Constitution at the Nation’s official website, and may obtain copies from numerous sources within the N ation. http://www.ho-chunknation.com/ *293 goveramentyconstitution.htm (last visited Jan. 26, 2006) (on file with MIS Dep’t).
In the same respect that no governmental branch can act outside constitutional confines, no branch may exercise the constitutional authority delegated to a coequal branch of government by the HCN General Council, ie., the People of the Nation. Const., Arts. III, § 3, IV, §§ 1-2. While the Legislature may promulgate law, the Legislature cannot enact judicial procedural rules. Id., Arts. V, § 2(a), VII, § 7(b); see also Judiciary Act, § 1.5c. The defendant fittingly questioned “whether New York procedural law or Ho-Chunk procedural law applies to this litigation.” Def.’s Resp. I at 3 n. 2. The Court is constitutionally obligated to apply the procedural rules adopted by the Supreme Court “in all actions and proceedings.” HCN R. Civ. P. 1; see also Judiciary Act, § 1.5d. Legislative attempts to adopt purely procedural rules have resulted in determinations of unconstitutionality. Bonnie Smith v. Ho-Chunk Nation Gaming Comm’n, CV 01-02 (HCN Tr. Ct., Feb. 14, 2001), aff'd, SU 01-02 (HCN S.Ct., June 15, 2001).
As a result, the Court will interpret and apply New York substantive law, ie., laws of the Nation, in resolving certain issues presented within the pending motions. See Const., Art. IV, § 2. New York statutory law in effect upon the execution of the Agreement, including any final judicial interpretations of such law by the New York Court of Appeals, comprises the applicable substantive law. The Court shall deem all other lower foreign court decisions as persuasive authority since the Legislature could not act to supersede either this Court’s or the Supreme Court’s interpretations of the law with those not entitled to stare decisis effect in the other jurisdiction. As warranted, the Court shall apply the HCN R. Civ. P. or Fed.R.Evid. to other issues presented within the pending motions. The Court shall now separately address and resolve the four (4) distinct issues before it.
I. Does the defendant properly assert qualified immunity pursuant to N.Y. C.P.L.R. 3101(d)(2) in response to plaintiffs Interrogatory/Request for Documents (a) for the purpose of avoiding full disclosure of Documents 1-4 and 6-11?
The Court refers to New York statutory law on this issue, but notes, in general, that “[i]t is the policy of the Court to favor open discovery of relevant material as a way of fostering full knowledge of the facts relevant to a case by all parties.” HCN R. Civ. P., Ch. V, Intro. In particular, the Supreme Court has not identified the assertion of such privilege as within the bounds of judicial procedure.[8] The applicable law provides:
*294 materials otherwise - discoverable ... and prepared in anticipation of litigation or for trial by or for another party . . . may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
N.Y. C.P.L.E. 3101(d)(2). The Court, therefore, must offer an interpretation. of the phrase, “prepared in anticipation of litigation.” The defendant cannot assert that it prepared any of the documents “for trial” since the plaintiff filed its initial pleading after their creation.
Each party draws the Court’s attention to a number of New York judgments that attempt to elucidate the meaning of the above provision. The Court shall provide an overview of the relevant case law, which the parties largely agree upon in their respective memoranda.[9] The Court will adopt the reasoning within the cited cases to effectuate the reasonable intentions of the parties by inclusion of the governing law clause. To begin, “the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity.” Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (N.Y.1991). Specifically in regards to a claim of qualified immunity, “[t]he burden is upon the ... party opposing discovery[ ] to demonstrate that the reports and documents are nondiscovera-ble.” [10] Crow-Crimmins-Wolff & Munier v. County of Westchester, 123 A.D.2d 813, 814, 507 N.Y.S.2d 428 (1986).
“|U]nder New York law, ‘material prepared by non-attorneys in anticipation , of litigation ... is immune from discovery only where the material is prepared exclusively and in specific response to imminent litigation.’ ” Calabro v. Stone, 225 F.R.D. 96, 99 n. 1 (E.D.N.Y.2004) (quoting Willis v. Westin Hotel Co., 1987 WL 6155, *1, 1987 U.S. Dist. LEXIS 524, at *1 (S.D.N.Y. Jan. 30, 1987)). Furthermore, “although the prospect of litigation may have been cogent at the time, ... ‘multimotived reports do not warrant the immunity if litigation is but one of the *295 motives.’ ” Stenovich v. Wachtell, Lipton, Rosen & Katz, 195 Misc.2d 99, 116, 756 N.Y.S.2d 367 (N.Y.Sup.Ct.2003) (quoting Chemical Bank v. Nat’l Union Fire Ins. Co. of Pittsburgh, Pa., 70 A.D.2d 837, 838, 418 N.Y.S.2d 23 (1979)).
(A]s a general matter, the work-product rule applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation. It follows, then, that if a party prepares a document in the ordinary course of its business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation.
Stenovich, 195 Misc.2d. at 116, 756 N.Y.S.2d 367 (quoting Martin v. Valley Natl. Bank of Arizona, 140 F.R.D. 291, 301 (S.D.N.Y.1991) (citations omitted)).
In the instant case, the Court cannot discern whether the partially or wholly redacted documents satisfy the foregoing tests without viewing the original documents. The defendant, however, questioned the propriety of the presiding judge conducting an in camera, inspection since the parties will be participating in a bench trial. LPER at 7, 11:00:00 CDT. In order to avoid claims of prejudice, the Court has appointed a pro tempore judge to view the documents in camera,.
The defendant must submit copies of the unaltered documents to Pro Tempore Judge Kimberly Vele at N8725 Silver Creek Road, Bowler, WI 54416,[11] within fifteen (15) calendar days of the issuance of this judgment. Along with this decision, the Court will forward a copy of the Defendant's Privilege Log and accompanying documents to Judge Vele for purposes of comparison. Judge Vele shall make a single copy of the unaltered documents upon receipt, and subsequently render a written determination as to the permissible extent of their production within thirty (30) days. Along with this determination, which the jrro tempore judge shall submit to the Clerk of Court for filing, Judge Vele shall provide the documents bearing her redactions to the defendant.
The defendant shall then have ten (10) calendar days after the entry of such interlocutory order to file a petition for permission to appeal with the Supreme Court. HCN R.App. P. 8. The defendant shall also seek a stay of the judgment from this Court in the event it files an interlocutory appeal, HCN R. Civ. P. 68. Judge Vele shall neither deliver copies of her redac-tions nor the written decision to the plaintiff until after affording the defendant the opportunity to request the foregoing relief. The Clerk of Court shall release a copy of the decision to the plaintiff in the absence of an appeal, and at no time prior shall she reveal the decision to the presiding judge or other individuals. Judge Vele shall transmit the reserved plaintiffs copies to the Clerk of Court for filing and delivery to the plaintiff in the absence of an appeal.
Judge Vele must remain cognizant that “the mere assertion that [the disputed records] constitute an attorney’s work product or material prepared for litigation will not suffice.” Zimmerman v. Nassau Hosp., 76 A.D.2d 921, 921, 429 N.Y.S 2d 262 (N.Y.App.Div.1980). The pro tempore judge must thoughtfully and deliberately apply the above tests. The Court is confident that Judge Vele will diligently and carefully perform this task, and appreciates her assistance in this regard.
In the event that the plaintiff disagrees with the results of the in camera inspection, it may still seek full or greater pro *296 duction of the documents by establishing “substantial need of the materials in the preparation of [its] case and [that it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means.” N.Y. C.P.L.R. 3101(d)(2). The plaintiff may file a motion for this purpose within thirty (30) days after the conclusion of the discovery period. The parties shall inform the Court of the date for the anticipated close of discovery within sixty (60) days of the entrance of this decision.
II. Docs the defendant properly assert attorney work product privilege pursuant to N.Y. C.P.L.R. 3101(e) in response to plaintiffs Interrogatory/Request for Documents (a) for the purpose of avoiding full disclosure of Documents 3-5 and 11?
The Court shall not reiterate its statements concerning the extent and application of Ho-Chunk procedural rules to the present question. The Court will note that the Supreme Court adopted the State of Wisconsin Rules of Professional Conduct for Attorneys on August 31, 1996.[12] The professional rules do not directly address attorney-client privilege, but the Ho-Chunk Oath or Affirmation includes the promise that legal counsel “will maintain the confidence and preserve inviolate the secrets of [their] client.” Rules for Admission to Practice, Rule IX. This provision is not directly implicated in this case since defendant’s counsel seeks to bar disclosure of corporate counsel’s statements, which purportedly other, corporate employees communicated amongst one another.
The applicable law provides that “[t]he work product of an attorney shall not be obtainable.” N.Y. C.P.L.R. 3101(c). By implicit reference, the work product in question may also include the following proscription related to attorney-client privilege: “Unless the client waives the privilege, an attorney ... shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action ”[13]
The defendant contends that the identified documents reveal either corporate counsel work product or privileged communications or both. The plaintiff counters that former corporate counsel did not create the documents, but authorship does not prove dispositive.
Legal advice to a corporate client inherently involves dispersing the advice to corporate representatives. Specifically when the communication is from the attorney to the client, the communications “must be made for the purposes of facilitating the rendition of legal advice or services, in the course of a professional relationship.” Rossi v. Blue Cross & Blue Shield, 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 540 N.E.2d 703 (N.Y.1989). The United States District Court for the Southern District of New York sets forth general principles related to the application of the privilege to advice rendered by the attorney to a corporate client.
*297 “The privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation. ‘A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.’ SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 518 (D.Conn.1976), appeal dismissed, 584 F.2d 1031, 1032 (2d Cir.1976). This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege.” Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A., 160 F.R.D. 437, 442 (S.D.N.Y.1995) (citations omitted).
The inquiry, when there is an attorney-corporate client relationship, as to whether a document is privileged is fact specific with an appraisal being made as to whether it is protected legal communications or just unprotected business communications. Rossi, 73 N.Y.2d at 593, 542 N.Y.S.2d 508, 540 N.E.2d 703. The proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and it was made in order to assist in obtaining or providing legal advice or services to the client.
Charter One Bank, 191 Misc.2d at 165-66, 738 N.Y.S.2d 179.
A court must discern the role occupied by corporate counsel when scrutinizing particular statements.
[Ujnlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with mixed business-legal responsibility; whether or not officers, their day-to-day involvement in their employers’ affairs may blur the line between legal and nonlégal communications; and their advice may originate not in response to the client’s consultation about a particular problem but with them, as part of an ongoing, permanent relationship with the organization. In that the privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure.
Rossi, 73 N.Y.2d at 592-93, 542 N.Y.S.2d 508, 540 N.E.2d 703. Furthermore, unlike the qualified immunity imparted by N.Y. C.P.L.R. 3101(d)(2), an assertion of either attorney work product or privileged communication does not necessarily falter if the proponent’s actions were not undertaken in anticipation of litigation. A court’s focus, instead, must remain upon the character of the conduct in question, i.e., whether in or in conjunction with the performance of one’s professional responsibility as an attorney.
Pertaining to attorney-client privilege, “[t]he communication must be made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose. Conversely, one who seeks out an attorney for business or personal advice may not assert a privilege as to those communications.” In re Bekins Record Storage Co., 62 N.Y.2d 324, 329, 476 N.Y.S.2d 806, 465 N.E.2d 345 (N.Y.1984) (citations omitted). In this respect, the prospect of litigation may shed some light upon the motivations of coun *298 sel.[14] For example, if an attorney produces documents significantly in advance of litigation, then the documents may “concern both the business and legal aspects of a defendant's] ongoing negotiations with [aj plaintiff with respect to [a] business transaction out of which [an] underlying lawsuit ultimately arfises].” Cooper-Rutter Assoc., Inc. v. Anchor Nat’l Life Ins. Co., 168 A.D.2d 663, 663, 563 N.Y.S.2d 401 (N.Y.App.Div.1990). When confronted with such a situation, a court may deem that documents do not possess a “primarty] ... legal character, but express[ ] substantial non-legal concerns.” Id.
An attorney’s work product must similarly arise in the context of his or her professional capacity as legal counsel. N.Y. C.P.L.R. 3101(c)
affords absolute immunity from disclosure of attorney’s work product. The work product of an attorney is reflected “in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.” Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It is a generally recognized policy that for an attorney to properly represent a client, the lawyer be allowed to “assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.” Id. A lawyer must work on a client’s behalf “with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel .... [Otherwise,] much of what is now put down in writing would remain unwritten.”
Charter One Bank, 191 Misc.2d at 159, 738 N.Y.S.2d 179 (quoting id. at 510-11, 67 S.Ct. 385) (citations and footnote omitted). However, “[n]ot every manifestation of a lawyer’s labors enjoys the absolute immunity of work product. The exemption should be limited to those materials which are uniquely the product of a lawyer’s learning and professional skills, such as materials which reflect his legal research, analysis, conclusions, legal theory or strategy.” Hoffman v. Ro-San Manor, 73 A.D.2d 207, 211, 425 N.Y.S.2d 619 (N.Y.App.Div.1980).
Despite the potential for a fact-finding dilemma, the preceding discussion, for our purposes, distills to a single proposition: “[documents protected by the attorney-client privilege are absolutely immune from discovery.” Charter One Bank, 191 Misc.2d at 158, 738 N,Y.S.2d 179 (citing N.Y. C.P.L.R. 3101(b)). The, defendant in the case at bar contends that the redacted portions of Documents 3-5 and 11 “relay legal advice rendered by the Bank’s attorneys among representatives of the Bank.” Def.’s Resp. I at 21. However, if the representatives also sought legal advice of counsel, “[f]or the privilege to apply when communications are made from client to attorney, they ‘must be made for the purpose of obtaining legal advice and directed *299 to an attorney who lias been consulted for that purpose.’” Rossi, 73 N.Y.2d at 593, 542 N.Y.S.2d 508, 540 N.E.2d 703 (quoting In re Bekins, 62 N.Y.2d at 329, 476 N.Y.S.2d 806, 465 N.E.2d 345).
In the instant case, the Court cannot discern whether the partially or wholly redacted documents satisfy the foregoing tests without viewing the original documents. The defendant, however, questioned the propriety of the presiding judge conducting an in camera inspection since the parties will be participating in a bench trial. LPER at 7, 11:00:00 CDT. In order to avoid claims of prejudice, the Court has appointed a pro tempore judge to view the documents in camera,.
The defendant must submit copies of the unaltered documents to Pro Tempore Judge Kimberly Vele at N8725 Silver Creek Road, Bowler, WI 54416, within fifteen (15) calendar days of the issuance of this judgment. Along with this decision, the Court will forward a copy of the Defendant’s Privilege Log and accompanying documents to Judge Vele for purposes of comparison. Judge Vele shall make a single copy of the unaltered documents upon receipt, and subsequently render a written determination as to the permissible extent of their production within thirty (30) days. Along with this determination, which the pro tempore judge shall submit to the Clerk of Court for filing, Judge Vele shall provide the documents bearing her redac-tions to the defendant.
The defendant shall then have ten (10) calendar days after the entry of such interlocutory order to file a petition for permission to appeal with the Supreme Court. HCN R.App. P. 8. The defendant shall also seek a stay of the judgment from this Court in the event it files an interlocutory appeal. HCN R. Civ. P. 68. Judge Vele shall neither deliver copies of her redac-tions nor the written decision to the plaintiff until after affording the defendant the opportunity to request the foregoing relief. The Clerk of Court shall release a copy of the decision to the plaintiff in the absence of an appeal, and at no time prior shall she reveal the decision to the presiding judge or other individuals. Judge Vele shall transmit the reserved plaintiffs copies to the Clerk of Court for filing and delivery to the plaintiff in the absence of an appeal.
Judge Vele must remain cognizant that “the mere assertion that [the disputed records] constitute an attorney’s work product or material prepared for litigation will not suffice.” Zimmerman, 76 A.D.2d at 921, 429 N.Y.S.2d 262. The pro tempore judge must thoughtfully and deliberately apply the above tests. The Court is confident that Judge Vele will diligently and carefully perform this task, and appreciates her assistance in this regard.
In contrast to the preceding section, the plaintiff cannot subsequently attempt to overcome a successful assertion of attorney work product or attorney-client communication privilege. N.Y. C.P.L.R. 3101 clearly distinguishes between these privileges and the above-discussed qualified privilege. “The immunity which attaches to work product under subdivision (c) is absolute, while the immunity conferred on litigation material under subdivision (d) is conditional.” Hoffman, 73 A.D.2d at 211, 425 N.Y.S.2d 619.
III. Does the defendant properly assert undue burden pursuant to HCN R. Civ. P. 36 in response to plaintiffs Interrogatory/ Request for Documents (b) for the purpose of avoiding full disclosure of a voluminous amount of swap or hedging agreements entered into during an established timeframe?
The phrasing of the above question should reveal the Court’s answer to *300 this issue. Despite the plaintiffs attempts to narrow the scope of its discovery request, the defendant reasonably objects to the scope of the request as indicated in its responses set forth in Findings of Fact Nos. 20 and 22. Additionally, the Court must refrain from acting as an instrumentality for the inappropriate divulging of confidential banking information of individuals and entities not parties to this suit.
However, the plaintiff is undeniably attempting to seek relevant information as defined by the applicable evidentiary rule. As stated above, “the Court ... favor[s] open discovery of relevant material ...,” and recognizes the obviously broad definition of “relevant evidence.” [15] HCN R. Civ. P., Ch. V, Intro; see also Ronald K. Kirkwood v. Francis Decorah et al., CV 04-33 (HCN Tr. Ct., Oct. 18, 2004) at 5 (noting the Court’s need to liberally construe the discovery rules as required by HCN R. Civ. P. 2). “ ‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Fed. R.Evid. 401.
Therefore, the Court deems the defendant’s objections on the bases of the plaintiff allegedly seeking “irrelevant and immaterial information beyond the scope of the claims alleged” or information “not reasonably designed to lead to the discovery of admissible evidence” as either indefensible or premature. Def.s Am. Disc. Resp. at 9. The plaintiff requested the information in order to ascertain whether the defendant adheres to an industry or internal standard regarding the eomposition of swap or hedging agreements, and whether the Hank’s agents that structured the Agreement knew or should have known of such standards. LPER at 2-3, 10:20:21, 10:24:05 CDT. The Court accordingly holds that the defendant must provide the plaintiff with the requested information, but in a manner that adequately addresses confidentiality concerns and appreciates the defendant’s ability to reasonably perform re-dactions and/or accumulate statistical data.
In order to accomplish the foregoing, the Court shall require the plaintiff to identify an expert witness to modify the standing discovery request. The modified request shall seek information in the form of statistical data. The plaintiff must narrow the standing request so as to avoid presenting the defendant with a monumental and unmanageable task. The plaintiffs expert witness shall present the discovery request within thirty (30) days of the entrance of this decision, and the parties shall mutually agree upon the timeframe for a response. The Court shall waive the responsive timeframe of twenty-five (25) days as articulated in HCN R. Civ. P. 34. If necessary, the plaintiff may request additional time for presentation of the revised discovery request in the form of a motion.
IV. Does the plaintiff properly request attorney fees and costs pursuant to HCN R. Civ. P. 37 as a result of the defendant designating a deponent who allegedly lacked knowledge of the matters identified in the plaintiffs deposition notice?
In its August 31, 2004 judgment, the Court noted that “[t]he plaintiffs (Ve *301 tice of Taking Deposition ... providefs] sufficient guidance to the defendant as to what individual representatives of the corporate entity should be made available for deposition.” Order (Denying Mot. for Protective Order) at 2. This ruling, however, did not entitle the plaintiff to a particular deponent since not specifically identified in the deposition notice. The plaintiff may express dissatisfaction with the extent of the deponent’s knowledge, but the plaintiff should have crafted its notice in such a manner so as to correspond with its expectations.
The deposition notice requested that the “Defendant ... designate and make available for deposition ... other persons who consent to testify on its behalf concerning ... Defendant’s efforts to locate and produce documents, and the origin of document B0A00142.” Pl.’s Mot. II, Aff, Attach. A. The defendant presented a deponent who possessed this general knowledge, just not to the degree anticipated by the plaintiff. The Court cannot grant the plaintiffs request for sanctions due to the inarticulateness of the plaintiff, especially given the obvious need for specificity in this case. Moreover, the Court notes its propensity to deny litigation expenses. See HCN Treas. Dep’t et al. v. Shaunte Lowery-Roby, CV 05-64 (HCN Tr. Ct., Oct. 13, 2005) at 7 n. 3 (citing Kristen K White Eagle v. Ho-Chunk Casino et al., CV 04-97 (HCN Tr. Ct., Oct. 4, 2005) (denying litigation costs, including filing and mailing expenses); Chloris Lowe, Jr. v. HCN Legislature Members Elliot Garvin et al., CV 00-104, 2004 WL 5588795, — Am. Tribal Law -— (HCN Tr. Ct., Mar. 22, 2004) (denying attorney fees)).

. Individuals can obtain a copy of the applicable rules by contacting the Ho-Chunk Nation Judiciary at (715) 284-2722 or (800) 434-4070 or visiting the judicial website at www. ho-chunknation.com/government/judicial/ cons_Jaw.htm. Ho-Chunk Nation Bar members receive, copies of the HCN R. Civ. P. and the Ho--Chunk Nation Rules of Appellate Procedure (hereinafter HCN R.App. P.) upon admission. Order (Denying Mot. for Recons. & Denying Req. for Stay of Proceedings ), SU 03-06 at 12.

. The presiding judge extends his sincerest apologies to the parties for the failure of the Court to enter a timely decision in this matter. Each trial judge maintains a duty to "dispose promptly of the business of the *279 court.” HCN Rules of Judicial Ethics, § 4-1(E); see also In the Matter of Timely Issuance of Decisions, Admin. Rule 04-09-05(1) (HCN S.Ct., Apr. 9, 2005) (requiring issuance of final judgments within ninety (90) days following completion of trial level process). Former Chief Judge William H. Bossman utterly failed in this regard by not issuing a judgment prior to the expiration of his legislative appointment on July 1, 2005. In the interests of justice, the Court informs the parties of the availability of seeking mandamus relief from the Ho-Chunk Nation Supreme Court in order to compel action of a trial level judge. See In re: Casimir T. Ostrowski, SU 05-01 (HCN S.Ct.., Feb. 21, 2005) (citing Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. VII, § 6(a)).

. The Supreme Court adopted the Federal Rules of Evidence (hereinafter FED.R.Evro.) for usage in all tribal judicial proceedings. In re Adoption of Fed.R.Evid. (HCN S.Ct., June 5, 1999).

. On or about November 7, 2002, the plaintiff received the defendant's preliminary discovery response in which it declined to offer thorough responses due to the outstanding jurisdictional issue before the Court. Pl. ⅛ Mot. to Compel Disc., CV 02-93 (Jan. 10, 2003), Attach. A. As an aside, the Court implores the plaintiff to use numerical designations for its attachments and exhibits. See Am, Scheduling Order at 3, para. 5.

. In a September 1, 2004 written response, plaintiff’s counsel emphasized that “during yesterday's hearing [defendant's counsel! indicated on the record that the Bank’s custodian of records would be made available for [the September 2, 20041 deposition." PL's Mot. II, Aff., Attach. C. Defendant’s counsel, however, only remarked that he would be "willing to produce someone to talk about the efforts that were undertaken to produce the documents.’’ LPER at 12, 11:42:15 CDT; see also id. at 13-14, 11:44:06, 11:48:58 CDT.

. The primacy of the constitutional analysis, in part, precluded the Court from examining the former Long Arm Statute. The Legislature re-codified this statute on July 20, 2005, and it presently appears as 2 HCC § 15 within the Ho-Chunk Code. Individuals can obtain a copy of applicable laws by contacting the Ho-Chunk Nation Legislature at (715) 284-9343 or (800) 294-9343 or visiting the legislative website at www.ho-chunknation.com/ govemmen t/legis/code/IND EX2. html.

. The Court appropriately scrutinizes each pleading's jurisdictional statement. HCN R. Civ. P. 3(A). For example, the Court retains discretion to grant default judgments by virtue of the permissive wording of the relevant rule. Id., Rule 54(A). The Court, therefore, maintains an obvious policy of declining to enter default judgments due to unresolved jurisdictional issues. See, e.g., Citizens Cmty. Fed. v. Neperud, CV 04-18 (HCN Tr. Ct., Apr. 26, 2004); Scholze Ace Home Ctr., Inc. v. Perry, CV 00-92 (HCN Tr. Ct., Oct. 26, 2000).

. The Fed.R.Evid. references the Supreme Court’s reserved authority to promulgate rules affecting privilege. Fed.R.Evid. 501. The Supreme Court indeed possesses "exclusive authority and responsibility to ... establish written rules and procedures governing the use and operation of the Courts." Judiciary Act, § 1.5c, However, the Supreme Court has neither adopted any rules pertaining to the asserted qualified immunity at issue nor designated such as purely procedural as opposed to quasi-procedural or purely legal. Also, the Nation maintains no common law of privileges. The HCN Traditional Court reveals hocak tradition and custom through formal pronouncements, and these articulations form the basis of the Nation’s common law. See Const., Art. VII, § 5(a); see also Ho-Chunk Nation v. B & K Builders, Inc. et al., CV 00-91 at 15-16, 2001 WL 36153791, 3 Am. Tribal Law 381, 391-92 (Ho-Chunk Trial Ct.2001). The Court recognizes that Fed. R.Evid. 501 does not readily integrate with the tribal context, but the Supreme Court chose to adopt foreign rules by incorporation as opposed to drafting a tribal equivalent. In 1999, the Supreme Court adopted the Fed R. *294 Evid. pending "full adoption of the Ho-Chunk Nation Rules of Evidence.” In re Adoption of Fed.R.Evid. (HCN S.Ct., June 5, 1999).

. The defendant principally relies upon an unpublished slip opinion that analyzes the work product rule embedded within FED. R. CIV. P. 26(b)(3). Royal Indent. Co. v. Salo-mon Smith Barney, Inc., 4 Misc.3d 1006, 791 N.Y.S.2d 873, 2004 WL 1563259, *6-7 (N.Y.Sup.Ct. June 29, 2004). The Court accordingly declines to discuss this opinion.

. The plaintiff objects to the defendant’s filing of a deposition excerpt after the August 31, 2004 Motion Hearing in order to establish the point in time at which the defendant perceived the threat of litigation. The plaintiff faults the defendant for failing to satisfy its burden at the Hearing, and claims that the defendant should have supported its motion response with affidavits. The applicable rule, however, does not impose such a requirement. HCN R. Civ. P. 19(B). The Court would have informed the non-movant of any extra-procedural requirements imposed by the case law as it does when confronting summary judgment motions. Aleksandra Cichowski v. Four Winds Ins. Agency, LLC, CV 01-90 at 15-18, 2003 WL 25755013, 4 Am. Tribal Law 397, 407-09 (Ho-Chunk Trial Ct.2003), aff'd, SU 04-01 (HCN S.Ct., Aug. 20, 2004). The Court, did not do so since it had not yet informed the parties of whether New York or Ho-Chunk law governed the issue. As a final note, the Court shall require parties represented by counsel to place requests in formal motions to the Court instead of in letter form. See HCN R. Civ. P. 18; see also In re: Casimir T. Ostrowski, SU 05-01 (HCN S.Ct., Feb. 21, 2005) at 2 n. 1.

. Attorney Kimberly Vele presently serves as an Associate Judge of the Sac & Fox Tribe of the Mississippi in Iowa and the Stockbridge Munsee Community in Wisconsin.

. Similar to its adoption of the Fed.R.Evid., the Supreme Court adopted the Wisconsin Rules of Professional Conduct for Attorneys, SCR 20 pending “fall adoption of the Ho-Chunk Nation Rules of Professional Conduct for Attorneys.’' In re Adoption of Rules of Prof'l Conduct for Att’ys (HCN S.Ct., Aug. 31, 1996).

. Although possessing attributes of substance and procedure, confidential attorney communications predating litigation "are deemed substantive in nature for conflict of law purposes.” Brandman v. Cross & Brown Co. of Fla., Inc., 125 Misc.2d 185, 186, 479 N.Y.S.2d 435 (N.Y.Sup.Ct.1984) (citing N.Y.C.P.L.R. 4503).

. The defendant seizes upon the apparent threshold evidenced by the phrase, “prospect of litigation,” when determining whether documents merit qualified immunity protection pursuant to N.Y. C.P.L.R. 3101(d)(2). LPER at 5, 10:46:29 CDT; see also Def.'s Resp. I at 16-17. The New York Court of Appeals used this phrase when drawing a distinction between the immunities at issue here, stating "[tjhe prospect of litigation may be relevant to the subject of work product and trial preparation materials, but the attorney-client privilege is not tied to the contemplation of litigation." Spectrum Sys., 78 N.Y.2d at 380, 575 N.Y.S.2d 809, 581 N.E.2d 1055. The Court did not intend to erecta more lenient test that that included in Part I ol this decision, but rather referred to the analysis in general terms.

. The Supreme Court has not analyzed the discovery rules, in general, or the definition of relevant in evidence, in particular. The Supreme Court has clarified that “fw]hile the trial court should try to remain consistent in ils decisions, only decisions by th[e HCN Supreme Court] are limitations on the Trial Court.” Jacob LoneTree et al. v. Robert Funmaker et al. SU 00-16 (HCN S.Ct., Mar. 16, 2001) at 4.